## ALBRIGHT *v.* OLIVER ET AL.

No. 92–833.   Argued October 12, 1993—Decided January 24, 1994

CHIEF JUSTICE REHNQUIST, joined by JUSTICE O'CONNOR, JUSTICE SCALIA, and JUSTICE GINSBURG, concluded that Albright's claimed right to be free from prosecution without probable cause must be judged under the Fourth Amendment, and that substantive due process, with its "scarce and open-ended" "guideposts for responsible decision-making," *Collins* v. *Harker Heights*, 503 U. S. 115, 125, can afford Albright no relief.   Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" such a claim.   *Graham* v. *Connor*, 490 U. S. 386, 395.   The Fourth Amendment addresses the matter of pretrial deprivations of liberty, and the Court has noted that Amendment's relevance to the liberty deprivations that go hand in hand with criminal prosecutions.   See *Gerstein* v. *Pugh*, 420 U. S. 103, 114.   The Court has said that the accused is not "entitled to judicial oversight or review of the decision to prosecute."   *Id.*, at 118–

119. But Albright was not merely charged; he submitted himself to arrest. No view is expressed as to whether his claim would succeed under the Fourth Amendment, since he has not presented the question in his certiorari petition. Pp. 271–275.

JUSTICE KENNEDY, joined by JUSTICE THOMAS, determined that Albright's due process claim concerns not his arrest but instead the malicious initiation of a baseless criminal prosecution against him. The due process requirements for criminal proceedings do not include a standard for the initiation of a prosecution. Moreover, even assuming, *arguendo*, that the common-law interest in freedom from malicious prosecution is protected by the Due Process Clause, there is neither need nor legitimacy in invoking 42 U. S. C. § 1983 in this case, given the fact that Illinois provides a tort remedy for malicious prosecution and the Court's holding in *Parratt* v. *Taylor*, 451 U. S. 527, 535–544, that a state actor's random and unauthorized deprivation of such a due process interest cannot be challenged under § 1983 so long as the State provides an adequate postdeprivation remedy. Pp. 281–286.

JUSTICE SOUTER concluded that, because this case presents no substantial burden on liberty beyond what the Fourth Amendment is generally thought to redress already, petitioner has not justified recognition of a substantive due process violation in his prosecution without probable cause. Substantive due process should be reserved for otherwise homeless substantial claims, and should not be relied on when doing so will duplicate protection that a more specific constitutional provision already bestows. Petitioner's asserted injuries—including restraints on his movement, damage to his reputation, and mental anguish—are not alleged to have flowed from the formal instrument of prosecution, as distinct from the ensuing police seizure of his person; have been treated by the Courts of Appeals as within the ambit of compensability under 42 U. S. C. § 1983 for Fourth Amendment violations; and usually occur only after an arrest or other seizure. Pp. 286–291.

REHNQUIST, C. J., announced the judgment of the Court and delivered an opinion, in which O'CONNOR, SCALIA, and GINSBURG, JJ., joined. SCALIA, J., *post*, p. 275, and GINSBURG, J., *post*, p. 276, filed concurring opinions. KENNEDY, J., filed an opinion concurring in the judgment, in which THOMAS, J., joined, *post*, p. 281. SOUTER, J., filed an opinion concurring in the judgment, *post*, p. 286. STEVENS, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 291.

*John H. Bisbee* argued the cause for petitioner. With him on the briefs was *Barry Nakell.*

*James G. Sotos* argued the cause for respondents. With him on the brief were *Michael W. Condon, Charles E. Hervas,* and *Michael D. Bersani.*\*

CHIEF JUSTICE REHNQUIST announced the judgment of the Court and delivered an opinion, in which JUSTICE O'CONNOR, JUSTICE SCALIA, and JUSTICE GINSBURG join.

A warrant was issued for petitioner's arrest by Illinois authorities, and upon learning of it he surrendered and was released on bail. The prosecution was later dismissed on the ground that the charge did not state an offense under Illinois law. Petitioner asks us to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. We decline to do so.

We review a decision of the Court of Appeals for the Seventh Circuit affirming the grant of a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and we must therefore accept the well-pleaded allegations of the complaint as true. Illinois authorities issued an arrest warrant for petitioner Kevin Albright, charging him on the basis of a previously filed criminal information with the sale of a substance which looked like an illegal drug. When he learned of the outstanding warrant, petitioner surrendered to respondent, Roger Oliver, a police detective employed by the city of Macomb, but denied his guilt of such an offense. He was released after posting bond, one of the conditions of which was that he not leave the State without permission of the court.[1]

---

*\*Leon Friedman, Steven R. Shapiro, John A. Powell,* and *Harvey Grossman* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

*Richard Ruda* filed a brief for the National League of Cities et al. as *amici curiae* urging affirmance.

[1] Before the criminal information was filed, one Veda Moore, an undercover informant, had told Oliver that she bought cocaine from one John Albright, Jr., at a student hotel in Macomb. The "cocaine" turned out to

At a preliminary hearing, respondent Oliver testified that petitioner sold the look-alike substance to Moore, and the court found probable cause to bind petitioner over for trial. At a later pretrial hearing, the court dismissed the criminal action against petitioner on the ground that the charge did not state an offense under Illinois law.

Albright then instituted this action under Rev. Stat. § 1979, 42 U. S. C. § 1983, against Detective Oliver in his individual and official capacities, alleging that Oliver deprived him of substantive due process under the Fourteenth Amendment—his "liberty interest"—to be free from criminal prosecution except upon probable cause.[2]  The District Court granted respondent's motion to dismiss under Rule 12(b)(6) on the ground that the complaint did not state a claim under § 1983.[3]  The Court of Appeals for the Seventh Circuit affirmed, 975 F. 2d 343 (1992), relying on our decision in *Paul* v. *Davis*, 424 U. S. 693 (1976).  The Court of Appeals held that prosecution without probable cause is a constitutional tort actionable under § 1983 only if accompanied by incarceration or loss of employment or some other "palpable

---

be baking powder, however, and the grand jury indicted John Albright, Jr., for selling a "look-alike" substance.  When Detective Oliver went to serve the arrest warrant, he discovered that John Albright, Jr., was a retired pharmacist in his sixties, and apparently realized he was on a false scent.  After discovering that it could not have been the elderly Albright's son, John David, who was involved in the incident, Detective Oliver contacted Moore to see if the sale was actually made by petitioner Kevin Albright, a second son of John Albright, Jr.  Moore confirmed that petitioner Kevin Albright made the sale.

[2] The complaint also named the city of Macomb as a defendant to the § 1983 action and charged a common-law malicious prosecution claim against Detective Oliver.

[3] The District Court also held that Detective Oliver was entitled to a defense of qualified immunity, and that the complaint failed to allege facts sufficient to support municipal liability against the city of Macomb.  The District Court also dismissed without prejudice the common-law claim of malicious prosecution against Detective Oliver.  These issues are not before this Court.

consequenc[e]." 975 F. 2d, at 346–347. The panel of the Seventh Circuit reasoned that "just as in the garden-variety public-officer defamation case that does not result in exclusion from an occupation, state tort remedies should be adequate and the heavy weaponry of constitutional litigation can be left at rest." *Id.*, at 347.[4] We granted certiorari, 507

---

[4] As noted by the Court of Appeals below, the extent to which a claim of malicious prosecution is actionable under § 1983 is one "on which there is an embarrassing diversity of judicial opinion." 975 F. 2d, at 345, citing *Brummett* v. *Camble*, 946 F. 2d 1178, 1180, n. 2 (CA5 1991) (cataloging divergence of approaches by the Courts of Appeals). Most of the lower courts recognize some form of malicious prosecution action under § 1983. The disagreement among the courts concerns whether malicious prosecutions, standing alone, can violate the Constitution. The most expansive approach is exemplified by the Third Circuit, which holds that the elements of a malicious prosecution action under § 1983 are the same as the common-law tort of malicious prosecution. See, *e. g.*, *Lee* v. *Mihalich*, 847 F. 2d 66, 70 (1988) ("[T]he elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort"). See also *Sanders* v. *English*, 950 F. 2d 1152, 1159 (CA5 1992) ("[O]ur circuit recognizes causes of action under § 1983 for false arrest, illegal detention . . . and malicious prosecution" because these causes of action "implicate the constitutional 'guarantees of the fourth and fourteenth amendments'"); *Robinson* v. *Maruffi*, 895 F. 2d 649 (CA10 1990); *Strength* v. *Hubert*, 854 F. 2d 421, 426, and n. 5 (CA11 1988) (recognizing that "freedom from malicious prosecution is a federal right protected by § 1983"). Other Circuits, however, require a showing of some injury or deprivation of a constitutional magnitude in addition to the traditional elements of common-law malicious prosecution. The exact standards announced by the courts escape easy classification. See, *e. g.*, *Torres* v. *Superintendent of Police of Puerto Rico*, 893 F. 2d 404, 409 (CA1 1990) (the challenged conduct must be "so egregious that it violated substantive or procedural due process rights under the Fourteenth Amendment"); *Usher* v. *Los Angeles*, 828 F. 2d 556, 561–562 (CA9 1987) ("[T]he general rule is that a claim of malicious prosecution is not cognizable under 42 U. S. C. § 1983 if process is available within the state judicial system to provide a remedy . . . . However, 'an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights'"); *Coogan* v. *Wixom*, 820 F. 2d 170, 175 (CA6 1987) (in addition to elements of malicious prosecution under

U. S. 959 (1993), and while we affirm the judgment below, we do so on different grounds. We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged.

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker* v. *McCollan*, 443 U. S. 137, 144, n. 3 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham* v. *Connor*, 490 U. S. 386, 394 (1989); and *Baker* v. *McCollan*, *supra*, at 140.

Petitioner's claim before this Court is a very limited one. He claims that the action of respondents infringed his substantive due process right to be free of prosecution without probable cause. He does not claim that Illinois denied him the procedural due process guaranteed by the Fourteenth Amendment. Nor does he claim a violation of his Fourth Amendment rights, notwithstanding the fact that his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment. *Terry* v. *Ohio*, 392 U. S. 1, 19 (1968); *Brower* v. *County of Inyo*, 489 U. S. 593, 596 (1989).[5]

We begin analysis of petitioner's claim by repeating our observation in *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992). "As a general matter, the Court has always been reluctant to expand the concept of substantive due process

state law, plaintiff must show an egregious misuse of a legal proceeding resulting in a constitutional deprivation). In holding that malicious prosecution is not actionable under § 1983 unless it is accompanied by incarceration, loss of protected status, or some other palpable consequence, the Seventh Circuit's decision below places it in this latter camp. In view of our disposition of this case, it is evident that substantive due process may not furnish the constitutional peg on which to hang such a "tort."

[5] Thus, Albright may have missed the statute of limitations for any claim he had based on an unconstitutional arrest or seizure. 975 F. 2d 343, 345 (CA7 1992). We express no opinion as to the timeliness of any such claim he might have.

because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. See, *e. g.*, *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833, 847–849 (1992) (describing cases in which substantive due process rights have been recognized). Petitioner's claim to be free from prosecution except on the basis of probable cause is markedly different from those recognized in this group of cases.

Petitioner relies on our observations in cases such as *United States* v. *Salerno*, 481 U. S. 739, 746 (1987), and *Daniels* v. *Williams*, 474 U. S. 327, 331 (1986), that the Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights. This is undoubtedly true, but it sheds little light on the scope of substantive due process. Petitioner points in particular to language from *Hurtado* v. *California*, 110 U. S. 516, 527 (1884), later quoted in *Daniels, supra*, stating that the words "by the law of the land" from the Magna Carta were "'intended to secure the individual from the arbitrary exercise of the powers of government.'" This, too, may be freely conceded, but it does not follow that, in all of the various aspects of a criminal prosecution, the only inquiry mandated by the Constitution is whether, in the view of the Court, the governmental action in question was "arbitrary."

*Hurtado* held that the Due Process Clause did not make applicable to the States the Fifth Amendment's requirement that all prosecutions for an infamous crime be instituted by the indictment of a grand jury. In the more than 100 years which have elapsed since *Hurtado* was decided, the Court has concluded that a number of the procedural protections contained in the Bill of Rights were made applicable to the States by the Fourteenth Amendment. See *Mapp* v. *Ohio*, 367 U. S. 643 (1961), overruling *Wolf* v. *Colorado*, 338 U. S.

25 (1949), and holding the Fourth Amendment's exclusionary rule applicable to the States; *Malloy* v. *Hogan*, 378 U. S. 1 (1964), overruling *Twining* v. *New Jersey*, 211 U. S. 78 (1908), and holding the Fifth Amendment's privilege against self-incrimination applicable to the States; *Benton* v. *Maryland*, 395 U. S. 784 (1969), overruling *Palko* v. *Connecticut*, 302 U. S. 319 (1937), and holding the Double Jeopardy Clause of the Fifth Amendment applicable to the States; *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), overruling *Betts* v. *Brady*, 316 U. S. 455 (1942), and holding that the Sixth Amendment's right to counsel was applicable to the States. See also *Klopfer* v. *North Carolina*, 386 U. S. 213 (1967) (Sixth Amendment speedy trial right applicable to the States); *Washington* v. *Texas*, 388 U. S. 14 (1967) (Sixth Amendment right to compulsory process applicable to the States); *Duncan* v. *Louisiana*, 391 U. S. 145 (1968) (Sixth Amendment right to jury trial applicable to the States).

This course of decision has substituted, in these areas of criminal procedure, the specific guarantees of the various provisions of the Bill of Rights embodied in the first 10 Amendments to the Constitution for the more generalized language contained in the earlier cases construing the Fourteenth Amendment. It was through these provisions of the Bill of Rights that their Framers sought to restrict the exercise of arbitrary authority by the Government in particular situations. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham* v. *Connor, supra,* at 395.[6]

---

[6] JUSTICE STEVENS' dissent faults us for ignoring, *inter alia*, our decision in *In re Winship*, 397 U. S. 358 (1970). *Winship* undoubtedly rejected the notion that all of the required incidents of a fundamentally fair trial were to be found in the provisions of the Bill of Rights, but it did so as a matter of procedural due process: " 'This notion [that the government must prove

We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions. See *Gerstein* v. *Pugh*, 420 U. S. 103, 114 (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest). We have said that the accused is not "entitled to judicial oversight or review of the decision to prosecute." *Id.*, at 118–119. See also *Beck* v. *Washington*, 369 U. S. 541, 545 (1962); *Lem Woon* v. *Oregon*, 229 U. S. 586 (1913). But here petitioner was not merely charged; he submitted himself to arrest.

---

the elements of a criminal case beyond a reasonable doubt]—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of "due process." " *Id.*, at 362, quoting *Leland* v. *Oregon*, 343 U. S. 790, 802–803 (1952) (Frankfurter, J., dissenting).

Similarly, other cases relied on by the dissent, including *Mooney* v. *Holohan*, 294 U. S. 103 (1935), *Napue* v. *Illinois*, 360 U. S. 264 (1959), *Brady* v. *Maryland*, 373 U. S. 83 (1963), *Giglio* v. *United States*, 405 U. S. 150 (1972), and *United States* v. *Agurs*, 427 U. S. 97 (1976), were accurately described in the latter opinion as "dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution." *Id.*, at 107.

We express no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari. We do hold that substantive due process, with its "scarce and open-ended" "guideposts," *Collins* v. *Harker Heights*, 503 U. S., at 125, can afford him no relief.[7]

The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE SCALIA, concurring.

One can conceive of many abuses of the trial process (for example, the use of a patently biased judge, see *Mayberry* v. *Pennsylvania*, 400 U. S. 455, 465–466 (1971)) that might cause a criminal sentence to be a deprivation of life, liberty or property *without due process*. But here there was no criminal sentence (the indictment was dismissed), and so the only deprivation of life, liberty or property, if any, consisted of petitioner's pretrial arrest. I think it unlikely that the procedures constitutionally "due," with regard to an arrest, consist of anything more than what the Fourth Amendment specifies; but petitioner has in any case not invoked "procedural" due process.

Except insofar as our decisions have included within the Fourteenth Amendment certain explicit substantive protections of the Bill of Rights—an extension I accept because it is both long established and narrowly limited—I reject the proposition that the Due Process Clause guarantees certain (unspecified) liberties, rather than merely guarantees certain procedures as a prerequisite to deprivation of liberty. See *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S.

---

[7] Petitioner appears to have argued in the Court of Appeals some variant of a violation of his constitutional right to interstate travel because of the condition imposed upon him pursuant to his release on bond. But he has not presented any such question in his petition for certiorari and has not briefed the issue here. We therefore do not consider it.

443, 470–471 (1993) (SCALIA, J., concurring). As I have ac-
knowledged, however, see *Michael H.* v. *Gerald D.*, 491 U. S.
110, 121 (1989) (opinion of SCALIA, J.), this Court's current
jurisprudence is otherwise. But that jurisprudence rejects
"the more generalized notion of 'substantive due process'"
at least to this extent: It cannot be used to impose additional
requirements upon such of the States' criminal processes as
are already addressed (and left without such requirements)
by the Bill of Rights. *Graham* v. *Connor*, 490 U. S. 386, 395
(1989). That proscription applies here. The Bill of Rights
sets forth, in the Fifth and Sixth Amendments, procedural
guarantees relating to the period before and during trial,
including a guarantee (the Grand Jury Clause) regarding
the manner of indictment. Those requirements are not to
be supplemented through the device of "substantive due
process."

For these reasons, in addition to those set forth by THE
CHIEF JUSTICE, the judgment here should be affirmed.

JUSTICE GINSBURG, concurring.

I agree with the plurality that Albright's claim against the
police officer responsible for his arrest is properly analyzed
under the Fourth Amendment rather than under the heading
of substantive due process. See *ante*, at 271. I therefore
join the plurality opinion and write separately to indicate
more particularly my reasons for viewing this case through
a Fourth Amendment lens.

Albright's factual allegations convey that Detective Oliver
notoriously disobeyed the injunction against unreasonable
seizures imposed on police officers by the Fourth Amend-
ment, and Albright appropriately invoked that Amendment
as a basis for his claim. See App. to Pet. for Cert. A–37,
A–53. Albright's submission to arrest unquestionably con-
stituted a seizure for purposes of the Fourth Amendment.
See *ante*, at 271. And, as the Court of Appeals recognized,
if the facts were as Albright alleged, then Oliver lacked cause

to suspect, let alone apprehend him. 975 F. 2d 343, 345 (CA7 1992); see *post*, at 292–293 (STEVENS, J., dissenting).

Yet in his presentations before this Court, Albright deliberately subordinated invocation of the Fourth Amendment and pressed, instead, a substantive due process right to be free from prosecution without probable cause.[1] This strategic decision appears to have been predicated on two doubtful assumptions, the first relating to the compass of the Fourth Amendment, the second, to the time frame for commencing this civil action.

Albright may have feared that courts would narrowly define the Fourth Amendment's key term "seizure" so as to deny full scope to his claim. In particular, he might have anticipated a holding that the "seizure" of his person ended when he was released from custody on bond, and a corresponding conclusion that Oliver's allegedly misleading testimony at the preliminary hearing escaped Fourth Amendment interdiction.[2]

The Fourth Amendment's instruction to police officers seems to me more purposive and embracing. This Court has noted that the common law may aid contemporary inquiry into the meaning of the Amendment's term "seizure." See *California* v. *Hodari D.*, 499 U. S. 621, 626, n. 2 (1991). At common law, an arrested person's seizure was deemed to

---

[1] Albright's presentations essentially carve up the officer's conduct, though all part of a single scheme, so that the actions complained of match common-law tort categories: first, false arrest (Fourth Amendment's domain); next, malicious prosecution (Fifth Amendment territory). In my view, the constitutional tort 42 U. S. C. § 1983 authorizes stands on its own, influenced by the substance, but not tied to the formal categories and procedures, of the common law. According the Fourth Amendment full sway, I would not force Albright's case into a different mold.

[2] Such a concern might have stemmed from Seventh Circuit precedent set before *Graham* v. *Connor*, 490 U. S. 386 (1989). See *Wilkins* v. *May*, 872 F. 2d 190, 192–195 (1989) (substantive due process "shock the conscience" standard, not Fourth Amendment, applies to brutal "post-arrest pre-charge" interrogation).

continue even after release from official custody. See, *e. g.*, 2 M. Hale, Pleas of the Crown *124 ("he that is bailed, is in supposition of law still in custody, and the parties that take him to bail are in law his keepers"); 4 W. Blackstone, Commentaries *297 (bail in both civil and criminal cases is "a delivery or bailment, of a person to his sureties, . . . he being supposed to continue in their friendly custody, instead of going to gaol"). The purpose of an arrest at common law, in both criminal and civil cases, was "only to compel an appearance in court," and "that purpose is equally answered, whether the sheriff detains [the suspect's] person, or takes sufficient security for his appearance, called bail." 3 *id.*, at *290 (civil cases); 4 *id.*, at *297 (nature of bail is the same in criminal and civil cases). The common law thus seems to have regarded the difference between pretrial incarceration and other ways to secure a defendant's court attendance as a distinction between methods of retaining control over a defendant's person, not one between seizure and its opposite.[3]

This view of the definition and duration of a seizure comports with common sense and common understanding. A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject, as in this case, to the condition that he seek formal permission from the court (at significant expense) before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.

---

[3] For other purposes, *e. g.*, to determine the proper place for condemnation trials, "seizure" traditionally had a time- and site-specific meaning. See *Thompson* v. *Whitman*, 18 Wall. 457, 471 (1874) ("seizure [of a sloop] is a single act"; "[p]ossession, which follows seizure, is continuous").

A defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a defendant released pretrial is not still "seized" in the constitutionally relevant sense. Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges. He is equally bound to appear, and is hence "seized" for trial, when the state employs the less strong-arm means of a summons in lieu of arrest to secure his presence in court.[4]

This conception of a seizure and its course recognizes that the vitality of the Fourth Amendment depends upon its constant observance by police officers. For Oliver, the Fourth Amendment governed both the manner of, and the cause for, arresting Albright. If Oliver gave misleading testimony at the preliminary hearing, that testimony served to maintain and reinforce the unlawful haling of Albright into court, and so perpetuated the Fourth Amendment violation.[5]

---

[4] On the summons-and-complaint alternative to custodial arrest, see 2 W. LaFave, Search and Seizure 432–436 (2d ed. 1987).

[5] Albright's reliance on a "malicious prosecution" theory, rather than a Fourth Amendment theory, is anomalous. The principal player in carrying out a prosecution—in "the formal commencement of a criminal proceeding," see *post*, at 295 (STEVENS, J., dissenting)—is not police officer but prosecutor. Prosecutors, however, have absolute immunity for their conduct. See *Burns* v. *Reed*, 500 U. S. 478, 487–492 (1991). Under Albright's substantive due process theory, the star player is exonerated, but the supporting actor is not.

In fact, Albright's theory might succeed in exonerating the supporting actor as well. By focusing on the police officer's role in initiating and pursuing a criminal prosecution, rather than his role in effectuating and maintaining a seizure, Albright's theory raises serious questions about whether the police officer would be entitled to share the prosecutor's absolute immunity. See *post*, at 308–309, n. 26 (STEVENS, J., dissenting) (noting that the issue is open); cf. *Briscoe* v. *LaHue*, 460 U. S. 325, 326 (1983) (holding that § 1983 does not "authoriz[e] a convicted person to assert a claim for damages against a police officer for giving perjured testimony at

A second reason for Albright's decision not to pursue a Fourth Amendment claim concerns the statute of limitations. The Court of Appeals suggested in dictum that any Fourth Amendment claim Albright might have had accrued on the date of his arrest, and that the applicable 2-year limitations period expired before the complaint was filed.[6]  975 F. 2d, at 345.  Albright expressed his acquiescence in this view at oral argument.  Tr. of Oral Arg. 13, 20–21.

Once it is recognized, however, that Albright remained effectively "seized" for trial so long as the prosecution against him remained pending, and that Oliver's testimony at the preliminary hearing, if deliberately misleading, violated the Fourth Amendment by perpetuating the seizure, then the limitations period should have a different trigger.  The time to file the § 1983 action should begin to run not at the start, but at the end of the episode in suit, *i. e.*, upon dismissal of the criminal charges against Albright.  See *McCune* v. *Grand Rapids*, 842 F. 2d 903, 908 (CA6 1988) (Guy, J., concurring in result) ("Where . . . innocence is what makes the state action wrongful, it makes little sense to require a federal suit to be filed until innocence or its equivalent is established by the termination of the state procedures in a manner favorable to the state criminal defendant.").  In sum, Albright's Fourth Amendment claim, asserted within the requisite period after dismissal of the criminal action, in my judgment was neither substantively deficient nor inevitably time barred.  It was, however, a claim Albright abandoned in the District Court and did not attempt to reassert in this Court.

---

his criminal trial").  A right to sue someone who is absolutely immune from suit would hardly be a right worth pursuing.

[6] In § 1983 actions, federal courts apply the state statute of limitations governing actions for personal injury.  See *Wilson* v. *Garcia*, 471 U. S. 261, 276–280 (1985).  The question when the limitations period begins to run, however, is one of federal law.  See *id.*, at 268–271; see generally *Connors* v. *Hallmark & Son Coal Co.*, 935 F. 2d 336, 341 (CADC 1991) (collecting cases).

The principle of party presentation cautions decisionmakers against asserting it for him.   See *ante,* at 275.

\* \* \*

In *Graham* v. *Connor,* 490 U. S. 386 (1989), this Court refused to analyze under a "substantive due process" heading an individual's right to be free from police applications of excessive force.   "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of . . . governmental conduct," we said, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.,* at 395.   I conclude that the Fourth Amendment similarly proscribes the police misconduct Albright alleges.   I therefore resist in this case the plea "to break new ground," see *Collins* v. *Harker Heights,* 503 U. S. 115, 125 (1992), in a field—substantive due process—that "has at times been a treacherous [one] for this Court."   See *Moore* v. *East Cleveland,* 431 U. S. 494, 502 (1977) (opinion of Powell, J.).

JUSTICE KENNEDY, with whom JUSTICE THOMAS joins, concurring in the judgment.

I agree with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process.   But I write because Albright's due process claim concerns not his arrest but instead the malicious initiation of a baseless criminal prosecution against him.

I

The State must, of course, comply with the constitutional requirements of due process before it convicts and sentences a person who has violated state law.   The initial question here is whether the due process requirements for criminal proceedings include a standard for the initiation of a prosecution.

The specific provisions of the Bill of Rights neither impose a standard for the initiation of a prosecution, see U. S. Const., Amdts. 5, 6, nor require a pretrial hearing to weigh evidence according to a given standard, see *Gerstein* v. *Pugh,* 420 U. S. 103, 119 (1975) ("[A] judicial hearing is not prerequisite to prosecution"); *Costello* v. *United States,* 350 U. S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, . . . is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more") (footnote omitted). Instead, the Bill of Rights requires a grand jury indictment and a speedy trial where a petit jury can determine whether the charges are true. Amdts. 5, 6.

To be sure, we have held that a criminal rule or procedure that does not contravene one of the more specific guarantees of the Bill of Rights may nonetheless violate the Due Process Clause if it " 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Medina* v. *California,* 505 U. S. 437, 445 (1992) (quoting *Patterson* v. *New York,* 432 U. S. 197, 202 (1977)). With respect to the initiation of charges, however, the specific guarantees contained in the Bill of Rights mirror the traditional requirements of the criminal process. The common law provided for a grand jury indictment and a speedy trial; it did not provide a specific evidentiary standard applicable to a pretrial hearing on the merits of the charges or subject to later review by the courts. See *United States* v. *Williams,* 504 U. S. 36, 51 (1992); *Costello, supra,* at 362–363; *United States* v. *Reed,* 27 F. Cas. 727, 738 (No. 16,134) (CC NDNY 1852) (Nelson, J.) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof").

Moreover, because the Constitution requires a speedy trial but no pretrial hearing on the sufficiency of the charges

(leaving aside the question of extended pretrial detention, see *County of Riverside* v. *McLaughlin,* 500 U. S. 44 (1991)), any standard governing the initiation of charges would be superfluous in providing protection during the criminal process. If the charges are not proved beyond a reasonable doubt at trial, the charges are dismissed; if the charges are proved beyond a reasonable doubt at trial, any standard applicable to the initiation of charges is irrelevant because it is perforce met. This case thus differs in kind from *In re Winship,* 397 U. S. 358 (1970), and the other criminal cases where we have recognized due process requirements not specified in the Bill of Rights. The constitutional requirements we enforced in those cases ensured fundamental fairness in the determination of guilt at trial. See, *e. g., Mooney* v. *Holohan,* 294 U. S. 103, 112 (1935) (due process prohibits "deliberate deception of court and jury" by prosecution's knowing use of perjured testimony); *ante,* at 273–274, n. 6.

In sum, the due process requirements for criminal proceedings do not include a standard for the initiation of a criminal prosecution.

## II

That may not be the end of the due process inquiry, however. The common law of torts long recognized that a malicious prosecution, like a defamatory statement, can cause unjustified torment and anguish—both by tarnishing one's name and by costing the accused money in legal fees and the like. See generally W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, pp. 870–889 (5th ed. 1984); T. Cooley, Law of Torts 180–187 (1879). We have held, of course, that the Due Process Clause protects interests other than the interest in freedom from physical restraint, see *Michael H.* v. *Gerald D.,* 491 U. S. 110, 121 (1989), and for purposes of this case, we can assume, *arguendo,* that some of the interests granted historical protection by the common law of torts (such as the interests in freedom from defamation and malicious prosecution)

are protected by the Due Process Clause. Even so, our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U. S. C. § 1983 so long as the State provides an adequate postdeprivation remedy. *Parratt* v. *Taylor*, 451 U. S. 527, 535–544 (1981); see *Hudson* v. *Palmer*, 468 U. S. 517, 531–536 (1984); *Ingraham* v. *Wright*, 430 U. S. 651, 674–682 (1977); *id.*, at 701 (STEVENS, J., dissenting) ("adequate state remedy for defamation may satisfy the due process requirement when a State has impaired an individual's interest in his reputation").

The commonsense teaching of *Parratt* is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts, even when a state actor is the alleged wrongdoer. As we explained in *Parratt*, the contrary approach "would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. . . . Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" 451 U. S., at 544 (quoting *Paul* v. *Davis*, 424 U. S. 693, 701 (1976)). The *Parratt* principle respects the delicate balance between state and federal courts and comports with the design of § 1983, a statute that reinforces a legal tradition in which protection for persons and their rights is afforded by the common law and the laws of the States, as well as by the Constitution. See *Parratt*, *supra*, at 531–532.

Yet it is fair to say that courts, including our own, have been cautious in invoking the rule of *Parratt*. See *Mann* v. *Tucson*, 782 F. 2d 790, 798 (CA9 1986) (Sneed, J., concurring).

That hesitancy is in part a recognition of the important role federal courts have assumed in elaborating vital constitutional guarantees against arbitrary or oppressive state action. We want to leave an avenue open for recourse where we think the federal power ought to be vindicated. Cf. *Screws* v. *United States*, 325 U. S. 91 (1945).

But the price of our ambivalence over the outer limits of *Parratt* has been its dilution and, in some respects, its transformation into a mere pleading exercise. The *Parratt* rule has been avoided by attaching a substantive rather than procedural label to due process claims (a distinction that if accepted in this context could render *Parratt* a dead letter) and by treating claims based on the Due Process Clause as claims based on some other constitutional provision. See *Taylor* v. *Knapp*, 871 F. 2d 803, 807 (CA9 1989) (Sneed, J., concurring). It has been avoided at the other end of the spectrum by construing complaints alleging a substantive injury as attacks on the adequacy of state procedures. See *Zinermon* v. *Burch*, 494 U. S. 113, 139–151 (1990) (O'CONNOR, J., dissenting); *Easter House* v. *Felder*, 910 F. 2d 1387, 1408 (CA7 1990) (Easterbrook, J., concurring). These evasions are unjustified given the clarity of the *Parratt* rule: In the ordinary case where an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law, there is no basis for intervention under § 1983, at least in a suit based on "the Due Process Clause of the Fourteenth Amendment *simpliciter.*" 451 U. S., at 536.

As *Parratt*'s precedential force must be acknowledged, I think it disposes of this case. Illinois provides a tort remedy for malicious prosecution; indeed, Albright brought a state-law malicious prosecution claim, albeit after the statute of limitations had expired. (That fact does not affect the adequacy of the remedy under *Parratt*. See *Daniels* v. *Williams*, 474 U. S. 327, 342 (1986) (STEVENS, J., concurring).) Given the state remedy and the holding of *Parratt*, there is

neither need nor legitimacy to invoke § 1983 in this case. See 975 F. 2d 343, 347 (CA7 1992) (case below).

## III

That said, if a State did not provide a tort remedy for malicious prosecution, there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983. Compare *Ingraham* v. *Wright*, 430 U. S., at 676, *id.*, at 701–702 (STEVENS, J., dissenting), and *Board of Regents of State Colleges* v. *Roth*, 408 U. S. 564, 573 (1972), with *Paul* v. *Davis, supra*, at 711–712; see *PruneYard Shopping Center* v. *Robins*, 447 U. S. 74, 93–94 (1980) (Marshall, J., concurring); *Martinez* v. *California*, 444 U. S. 277, 281–282 (1980); *Munn* v. *Illinois*, 94 U. S. 113, 134 (1877). But given the state tort remedy, we need not conduct that inquiry in this case.

\* \* \*

For these reasons, I concur in the judgment of the Court holding that the dismissal of petitioner Albright's complaint was proper.

JUSTICE SOUTER, concurring in the judgment.

While I agree with the Court's judgment that petitioner has not justified recognition of a substantive due process violation in his prosecution without probable cause, I reach that result by a route different from that of the plurality. The Court has previously rejected the proposition that the Constitution's application to a general subject (like prosecution) is necessarily exhausted by protection under particular textual guarantees addressing specific events within that subject (like search and seizure), on a theory that one specific constitutional provision can pre-empt a broad field as against another more general one. See *United States* v. *James Daniel Good Real Property, ante*, at 49 ("We have rejected the

view that the applicability of one constitutional amendment pre-empts the guarantees of another"); *Soldal* v. *Cook County,* 506 U. S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn"). It has likewise rejected the view that incorporation of the substantive guarantees of the first eight Amendments to the Constitution defines the limits of due process protection, see *Adamson* v. *California,* 332 U. S. 46, 89–92 (1947) (Black, J., dissenting). The second Justice Harlan put it this way:

> "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . is not a series of isolated points . . . . It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints . . . ." *Poe* v. *Ullman,* 367 U. S. 497, 543 (1961) (dissenting opinion).

We are, nonetheless, required by "[t]he doctrine of judicial self-restraint . . . to exercise the utmost care whenever we are asked to break new ground in [the] field" of substantive due process. *Collins* v. *Harker Heights,* 503 U. S. 115, 125 (1992). Just as the concept of due process does not protect against insubstantial impositions on liberty, neither should the "rational continuum" be reduced to the mere duplication of protections adequately addressed by other constitutional provisions. Justice Harlan could not infer that the due process guarantee was meant to protect against insubstantial burdens, and we are not free to infer that it was meant to be applied without thereby adding a substantial increment to protection otherwise available. The importance of recognizing the latter limitation is underscored by pragmatic concerns about subjecting government actors to two (potentially inconsistent) standards for the same conduct and needlessly

imposing on trial courts the unenviable burden of reconciling well-established jurisprudence under the Fourth and Eighth Amendments with the ill-defined contours of some novel due process right.[1]

This rule of reserving due process for otherwise homeless substantial claims no doubt informs those decisions, see *Graham* v. *Connor,* 490 U. S. 386 (1989), *Gerstein* v. *Pugh,* 420 U. S. 103 (1975), and *Whitley* v. *Albers,* 475 U. S. 312, 327 (1986), in which the Court has resisted relying on the Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed.[2]  This case calls for just such restraint, in present-

---

[1] JUSTICE STEVENS suggests that these concerns are not for this Court, since Congress resolved them in deciding to provide a remedy for constitutional violations under § 1983.  *Post,* at 312.  The question before the Court, however, is not about the existence of a statutory remedy for an admitted constitutional violation, but whether a particular violation of substantive due process, as distinct from the Fourth Amendment, should be recognized on the facts pleaded.  This question is indisputably within the province of the Court, and should be addressed with regard for the concerns about unnecessary duplication in constitutional adjudication reflected in *Graham* v. *Connor,* 490 U. S. 386 (1989), *Gerstein* v. *Pugh,* 420 U. S. 103 (1975), and *Whitley* v. *Albers,* 475 U. S. 312 (1986).  Nothing in Congress's enactment of § 1983 suggests otherwise.

[2] Recognizing these concerns makes sense of what at first blush may seem a tension between our decisions in *Graham* v. *Connor, supra,* and *Gerstein* v. *Pugh, supra,* on the one hand, and *United States* v. *James Daniel Good Real Property, ante,* p. 43, and *Soldal* v. *Cook County,* 506 U. S. 56 (1992), on the other.  The Court held in *Graham* that all claims of excessive force by law enforcement officials in the course of a "seizure" should be analyzed under the Fourth Amendment's "reasonableness" standard.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham* v. *Connor, supra,* at 395.  The *Gerstein* Court held that the Fourth Amendment, not the Due Process Clause, determines what post-arrest proceedings are required for suspects detained on criminal charges. *Gerstein* v. *Pugh, supra.*  As we recently explained in *United States* v. *James Daniel Good Real Property, ante,* at 50, the Court reasoned in

ing no substantial burden on liberty beyond what the Fourth Amendment is generally thought to redress already.

In framing his claim of infringement of a liberty interest in freedom from the initiation of a baseless prosecution, petitioner has chosen to disclaim any reliance on the Fourth Amendment seizure that followed when he surrendered himself into police custody. Petitioner has failed, however, to allege any substantial injury that is attributable to the former event, but not the latter. His complaint presents an extensive list of damages: limitations on his liberty, freedom of association, and freedom of movement by virtue of the terms of his bond; financial expense of his legal defense; reputational harm among members of the community; inability to transact business or obtain employment in his local area, necessitating relocation to St. Louis; inability to secure credit; and personal pain and suffering. See App. to Pet. for Cert. 49a–50a. None of these injuries, however, is alleged to have followed from the issuance of the formal instrument of prosecution, as distinct from the ensuing assertion of custody. Thus, petitioner has not shown a substantial deprivation of liberty from the mere initiation of prosecution.

The significance of this failure follows from the recognition that none of petitioner's alleged injuries has been treated by the Courts of Appeals as beyond the ambit of compensability

---

*Gerstein* that the Fourth Amendment "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases." See *Gerstein*, *supra*, at 125, n. 27. Thus, in both *Gerstein* and *Graham*, separate analysis under the Due Process Clause was dispensed with as redundant. The Court has reached the same result in the context of claims of unnecessary and wanton infliction of pain in penal institutions. See *Whitley* v. *Albers*, *supra*, at 327 ("It would indeed be surprising if . . . 'conduct that shocks the conscience' or 'afford[s] brutality the cloak of law,' and so violates the Fourteenth Amendment, *Rochin* v. *California*, 342 U. S. 165, 172, 173 (1952), were not also punishment 'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind,' *Estelle* v. *Gamble*, 429 U. S., at 103, 106, in violation of the Eighth'").

under the general rule of 42 U. S. C. § 1983 liability for a seizure unlawful under Fourth Amendment standards, see *Tennessee* v. *Garner*, 471 U. S. 1 (1985) (affirming § 1983 liability based on Fourth Amendment violation); *Brower* v. *County of Inyo*, 489 U. S. 593, 599 (1989) (unreasonable seizure in violation of the Fourth Amendment gives rise to § 1983 liability). On the contrary, the Courts of Appeals have held that injuries like those petitioner alleges are cognizable in § 1983 claims founded upon arrests that are bad under the Fourth Amendment. See, *e. g.*, *Hale* v. *Fish*, 899 F. 2d 390, 403–404 (CA5 1990) (affirming award of damages for mental anguish, harm to reputation, and legal fees for defense); *B. C. R. Transport Co., Inc.* v. *Fontaine*, 727 F. 2d 7, 12 (CA1 1984) (affirming award of damages for destruction of business due to publicity surrounding illegal search); *Sims* v. *Mulcahy*, 902 F. 2d 524, 532–533 (CA7 1990) (approving damages for pain, suffering, and mental anguish in the context of a challenge to jury instructions); *Sevigny* v. *Dicksey*, 846 F. 2d 953, 959 (CA4 1988) (affirming damages for extreme emotional distress); *Dennis* v. *Warren*, 779 F. 2d 245, 248–249 (CA5 1985) (affirming award of damages for pain, suffering, humiliation, and embarrassment); *Konczak* v. *Tyrrell*, 603 F. 2d 13, 17 (CA7 1979) (affirming damages for lost wages, mental distress, humiliation, loss of reputation, and general pain and suffering).

Indeed, it is not surprising that rules of recovery for such harms have naturally coalesced under the Fourth Amendment, since the injuries usually occur only after an arrest or other Fourth Amendment seizure, an event that normally follows promptly (three days in this case) upon the formality of filing an indictment, information, or complaint. There is no restraint on movement until a seizure occurs or bond terms are imposed. Damage to reputation and all of its attendant harms also tend to show up after arrest. The defendant's mental anguish (whether premised on reputational harm, burden of defending, incarceration, or some other con-

sequence of prosecution) customarily will not arise before an arrest, or at least before the notification that an arrest warrant has been issued, informs him of the charges.

There may indeed be exceptional cases where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure. Whether any such unusual case may reveal a substantial deprivation of liberty, and so justify a court in resting compensation on a want of government power or a limitation of it independent of the Fourth Amendment, are issues to be faced only when they arise. They do not arise in this case and I accordingly concur in the judgment of the Court.[3]

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

The Fifth Amendment to the Constitution constrains the power of the Federal Government to accuse a citizen of an infamous crime. Under that Amendment, no accusation may issue except on a grand jury determination that there is probable cause to support the accusation.[1] The question presented by this case is whether the Due Process Clause of the Fourteenth Amendment imposes any comparable constraint on state governments.

---

[3] JUSTICE STEVENS argues that the fact that "few of petitioner's injuries flowed *solely* from the filing of the charges against him does not make those injuries insubstantial," *post*, at 312 (emphasis in original), and maintains that the arbitrary filing of criminal charges may work substantial harm on liberty. *Ibid.* While I do not quarrel with either proposition, neither of them addresses the threshold question whether the complaint alleges any substantial deprivation beyond the scope of what settled law recognizes at the present time.

[1] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . . . ." U. S. Const., Amdt. 5. See also *United States* v. *Calandra*, 414 U. S. 338, 343 (1974).

In *Hurtado* v. *California*, 110 U. S. 516 (1884), we decided that the Due Process Clause does not compel the States to proceed by way of grand jury indictment when they initiate a prosecution. In reaching that conclusion, however, we noted that the substance of the federal guarantee was preserved by California's requirement that a magistrate certify "to the probable guilt of the defendant." *Id.*, at 538. In accord with *Hurtado*, I would hold that Illinois may dispense with the grand jury procedure only if the substance of the probable-cause requirement remains adequately protected.[2]

I

Assuming, as we must, that the allegations of petitioner's complaint are true, it is perfectly clear that the probable-cause requirement was not satisfied in this case. Indeed, it is plain that respondent Oliver, who attested to the criminal information against petitioner, either knew or should have known that he did not have probable cause to initiate criminal proceedings.

Oliver's only evidence against petitioner came from a paid informant who established her *unreliability* on more than 50 occasions, when her false accusations led to aborted and dismissed prosecutions.[3] Nothing about her performance in

---

[2] In *Hurtado*, 110 U. S., at 532, the Court made this comment on the traditions inherited from English law, with particular reference to the Magna Carta:

"Applied in England only as guards against executive usurpation and tyranny, here they have become bulwarks also against arbitrary legislation; but, in that application, as it would be incongruous to measure and restrict them by the ancient customary English law, they must be held to guarantee not particular forms of procedure, but the very substance of individual rights to life, liberty, and property.

". . . Such regulations, to adopt a sentence of Burke's, 'may alter the mode and application but have no power over the substance of original justice.'"

[3] According to the complaint, Oliver, a detective in the Macomb, Illinois, Police Department, agreed to provide Veda Moore with protection and money in exchange for her assistance in acting as a confidential inform-

this case suggested any improvement on her record. The substance she described as cocaine turned out to be baking soda. She twice misidentified her alleged vendor before, in response to a leading question, she agreed that petitioner might be he;[4] in fact, she had never had any contact with petitioner. As the Court of Appeals correctly concluded, the commencement of a serious criminal proceeding on such "scanty grounds" was nothing short of "shocking."[5]

---

ant. Allegedly, Moore, addicted to cocaine, lied to Oliver about her undercover purchases of controlled substances in order to receive the promised payments. During the course of her tenure as an informant, Moore falsely implicated over 50 individuals in criminal activity, resulting each time in a dismissed prosecution.

[4] Relying entirely on information provided by Moore, Oliver testified before a grand jury and secured an indictment against a first suspect, John Albright, Jr., for selling a "look-alike" substance in violation of Illinois law. When he attempted to arrest John Albright, Jr., however, Oliver became convinced that he had the wrong man, and substituted the name of a second suspect, Albright's son, on the arrest warrant. Once again, it became clear that Oliver's suspect could not have committed the crime. Oliver then asked Moore whether her vendor might have been a different son of the man she had first identified. When Moore admitted of that possibility, Oliver attested to the criminal information charging petitioner, his third and final suspect, with a felony.

[5] "Detective Oliver made no effort to corroborate Veda Moore's unsubstantiated accusation. A heap of baking soda was no corroboration. Her initial misidentification of the seller cast grave doubt on the accuracy of her information. And this was part of a pattern: of fifty persons she reported to Oliver as trafficking in drugs, none was successfully prosecuted for any crime. In the case of 'Albright,' Oliver should have suspected that Moore had bought cocaine either from she knew not whom or from someone she was afraid to snitch on (remember that she had gone to work for Oliver in the first place because she was being threatened by a man to whom she owed money for previous purchases of cocaine), that she had consumed it and replaced it with baking soda, and that she had then picked a name from the phone book at random. The fact that she used her informant's reward to buy cocaine makes this hypothesis all the more plausible. An arrest is a serious business. To arrest a person on the scanty grounds that are alleged to be all that Oliver had to go on is shocking." 975 F. 2d 343, 345 (CA7 1992).

These shocking factual allegations give rise to two important questions of law: does the commencement of formal criminal proceedings deprive the accused person of "liberty" as that term is used in the Fourteenth Amendment; and, if so, are the demands of "due process" satisfied solely by compliance with certain procedural formalities which ordinarily ensure that a prosecution will not commence absent probable cause? I shall discuss these questions separately, and then comment on the several opinions supporting the Court's judgment.

## II

Punishment by confinement in prison is a frequent conclusion of criminal proceedings. Had petitioner's prosecution resulted in his conviction and incarceration, then there is no question but that the Due Process Clause would have been implicated; a central purpose of the Fourteenth Amendment was to deny States the power to impose this sort of deprivation of liberty until after completion of a fair trial. Over the years, however, our cases have made it clear that the interests protected by the Due Process Clause extend well beyond freedom from an improper criminal conviction.

As a qualitative matter, we have decided that the liberty secured by the Fourteenth Amendment is significantly broader than mere freedom from physical constraint. Although its contours have never been defined precisely, that liberty surely includes the right to make basic decisions about the future; to participate in community affairs; to take advantage of employment opportunities; to cultivate family, business, and social relationships; and to travel from place to place.[6] On a quantitative level, we have, to be sure, ac-

---

[6] As we stated in *Meyer* v. *Nebraska*, 262 U. S. 390 (1923):

"While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life,

knowledged that not every modest impairment of individual liberty amounts to a deprivation raising constitutional concerns. Cf. *Meachum* v. *Fano*, 427 U. S. 215 (1976). At the same time, however, we have recognized that a variety of state actions have such serious effects on protected liberty interests that they may not be undertaken arbitrarily,[7] or without observing procedural safeguards.[8]

In my opinion, the formal commencement of a criminal proceeding is quintessentially this type of state action. The initiation of a criminal prosecution, regardless of whether it

---

to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Id.*, at 399 (citations omitted).

[7] See, *e. g.*, *Turner* v. *Safley*, 482 U. S. 78, 94–99 (1987) (invalidating prison regulation of inmate marriages); *Moore* v. *East Cleveland*, 431 U. S. 494, 500 (1977) (striking down ordinance that prohibited certain relatives from residing together because it had only a "tenuous relation" to its goals); *Wieman* v. *Updegraff*, 344 U. S. 183, 191 (1952) (requiring loyalty oaths of public employees violates due process because "[i]ndiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power"); *Pierce* v. *Society of Sisters*, 268 U. S. 510, 534–535 (1925) (state law requiring parents to send children to public school violates due process because "rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the State").

[8] See, *e. g.*, *Cleveland Bd. of Ed.* v. *Loudermill*, 470 U. S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case'") (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 313 (1950)); *Goss* v. *Lopez*, 419 U. S. 565, 581 (1975) ("[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"); *Wisconsin* v. *Constantineau*, 400 U. S. 433, 436–437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential").

prompts an arrest, immediately produces "a wrenching disruption of everyday life." *Young* v. *United States ex rel. Vuitton et Fils S. A.,* 481 U. S. 787, 814 (1987). Every prosecution, like every arrest, "is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States* v. *Marion,* 404 U. S. 307, 320 (1971). In short, an official accusation of serious crime has a direct impact on a range of identified liberty interests. That impact, moreover, is of sufficient magnitude to qualify as a deprivation of liberty meriting constitutional protection.[9]

## III

The next question, of course, is what measure of "due process" must be provided an accused in connection with this deprivation of liberty. In *In re Winship,* 397 U. S. 358, 361–364 (1970), we relied on both history and certain societal interests to find that, in the context of criminal conviction, due process entails proof of guilt beyond a reasonable doubt. The same considerations support a requirement that criminal prosecution be predicated, at a minimum, on a finding of probable cause.

It has been the historical practice in our jurisprudence to withhold the filing of criminal charges until the state can marshal evidence establishing probable cause that an identifiable defendant has committed a crime. This long tradition

---

[9] The Court of Appeals was persuaded that the Court's reasoning in *Paul* v. *Davis,* 424 U. S. 693 (1976), required a different conclusion. 975 F. 2d, at 345. Even if one accepts the dubious proposition that an individual's interest in his or her reputation *simpliciter* is not an interest in liberty, *Paul* v. *Davis* recognized that liberty is infringed by governmental conduct that injures reputation in conjunction with other interests. 424 U. S., at 701. The commencement of a criminal prosecution is certainly such conduct.

is reflected in the common-law tort of malicious prosecution,[10] as well as in our cases.[11] In addition, the probable-cause requirement serves valuable societal interests, protecting the populace from the whim and caprice of governmental agents without unduly burdening the government's prosecutorial function.[12] Consistent with our reasoning in *Winship*, these factors lead to the conclusion that one element of the "due process" prescribed by the Fourteenth Amendment is a responsible decision that there is probable cause to prosecute.[13]

Illinois has established procedures intended to ensure that evidence of "the probable guilt of the defendant," see *Hur-*

---

[10] See, *e. g.*, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, pp. 876–882 (5th ed. 1984).

[11] *Wayte* v. *United States*, 470 U. S. 598, 607 (1985); *Bordenkircher* v. *Hayes*, 434 U. S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); *Gerstein* v. *Pugh*, 420 U. S. 103, 119 (1975) ("The standard of proof required of the prosecution is usually referred to as 'probable cause,' but in some jurisdictions it may approach a prima facie case of guilt"); see also *United States* v. *Lovasco*, 431 U. S. 783, 791 (1977) (noting that "it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause") (footnote omitted); *United States* v. *Calandra*, 414 U. S., at 343 (noting that one of the "grand jury's historic functions" was to determine whether probable cause existed); *Dinsman* v. *Wilkes*, 12 How. 390, 402 (1852) (noting that instigation of a criminal prosecution without probable cause creates an action for malicious prosecution).

[12] Because probable cause is already required for an arrest, and proof beyond a reasonable doubt for a conviction, the burden on law enforcement is not appreciably enhanced by a requirement of probable cause for prosecution.

[13] I thus disagree with dicta to the contrary in a footnote in *Gerstein* v. *Pugh*, 420 U. S., at 125, n. 26 ("Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial"). As I have explained, the commencement of criminal proceedings itself infringes on liberty interests, regardless of the restraints imposed.

*tado,* 110 U. S., at 538, has been assembled before a criminal prosecution is pursued.[14]   Petitioner does not challenge the general adequacy of these procedures.   Rather, he claims that the probable-cause determination in his case was invalid as a substantive matter, because it was wholly unsupported by reliable evidence and tainted by Oliver's disregard or suppression of facts bearing on the reliability of his informant. This contention requires us to consider whether a state's compliance with facially valid procedures for initiating a prosecution is by itself sufficient to meet the demands of due process, without regard to the substance of the resulting probable-cause determination.

Fortunately, our prior cases have rejected such a formalistic approach to the Due Process Clause.   In *Mooney* v. *Holohan,* 294 U. S. 103, 110 (1935), a criminal defendant claimed that the prosecutor's knowing use of perjured testimony, and deliberate suppression of evidence that would have impeached that testimony, constituted a denial of due process. The State urged us to reject this submission on the ground that the petitioner's trial had been free of procedural error. Our treatment of the State's argument should dispose of the analogous defense advanced today:

> "Without attempting at this time to deal with the question at length, we deem it sufficient for the present purpose to say that we are unable to approve this narrow view of the requirement of due process.   That requirement, in safeguarding the liberty of the citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice which lie

---

[14] At the time of this suit, Illinois law allowed the filing of felony charges only by information or indictment.   Ill. Rev. Stat., Ch. 38, § 111–2(a) (1987).   If the filing were by information, as was the case here, then the charges could be filed but not pursued until a preliminary hearing had been held or waived pursuant to Ch. 38, § 109–3, and, if held, had concluded in a finding of probable cause to believe that the defendant had committed an offense.   Ch. 38, §§ 111–2(a), 109–3.

at the base of our civil and political institutions. *Hebert v. Louisiana,* 272 U. S. 312, 316, 317 [(1926)]. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation." *Id.,* at 112.

In the years since *Mooney,* we have consistently reaffirmed this understanding of the requirements of due process. Our cases make clear that procedural regularity notwithstanding, the Due Process Clause is violated by the knowing use of perjured testimony or the deliberate suppression of evidence favorable to the accused.[15] It is, in other words, well established that adherence to procedural forms will not save a conviction that rests in substance on false evidence or deliberate deception.

---

[15] See, *e. g., United States* v. *Agurs,* 427 U. S. 97, 103, and n. 8 (1976) (citing cases); *Giglio* v. *United States,* 405 U. S. 150, 153–154 (1972) (failure to disclose Government agreement with witness violates due process); *Brady* v. *Maryland,* 373 U. S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Napue* v. *Illinois,* 360 U. S. 264 (1959) (failure of State to correct testimony known to be false violates due process); *Pyle* v. *Kansas,* 317 U. S. 213, 215–216 (1942) (allegations of the knowing use of perjured testimony and the suppression of evidence favorable to the accused "sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody"). But cf. *United States* v. *Williams,* 504 U. S. 36 (1992) (prosecutor need not present exculpatory evidence in his possession to the grand jury).

Just as perjured testimony may invalidate an otherwise proper conviction, so also may the absence of proof render a criminal conviction unconstitutional. The traditional assumption that "proof of a criminal charge beyond a reasonable doubt is constitutionally required," *Winship*, 397 U. S., at 362, has been endorsed explicitly and tied directly to the Due Process Clause. *Id.*, at 364.[16] When the quantum of proof supporting a conviction falls sufficiently far below this standard, then the Due Process Clause requires that the conviction be set aside, even in the absence of any procedural error. *Jackson* v. *Virginia,* 443 U. S. 307 (1979).

In short, we have already recognized that certain substantive defects can vitiate the protection ordinarily afforded by a trial, so that formal compliance with procedural rules is no longer enough to satisfy the demands of due process. The same is true of a facially valid determination of probable cause. Even if prescribed procedures are followed meticulously, a criminal prosecution based on perjured testimony, or evidence on which "no rational trier of fact" could base a finding of probable cause, cf. *id.*, at 324, simply does not comport with the requirements of the Due Process Clause.

## IV

I do not understand the plurality to take issue with the proposition that commencement of a criminal case deprives the accused of liberty, or that the state has a duty to make a probable-cause determination before filing charges. Instead, both THE CHIEF JUSTICE and JUSTICE SCALIA identify petitioner's reliance on a "substantive due process" theory as the critical flaw in his argument. Because there is no substantive due process right available to petitioner, they

---

[16] "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U. S., at 364.

conclude, his due process claim can be rejected in its entirety and without further consideration.

In my opinion, this approach places undue weight on the label petitioner has attached to his claim.[17] The Fourteenth Amendment contains only one Due Process Clause. Though it is sometimes helpful, as a matter of doctrine, to distinguish between substantive and procedural due process, see *Daniels* v. *Williams*, 474 U. S. 327, 337–340 (1986) (STEVENS, J., concurring in judgments), the two concepts are not mutually exclusive, and their protections often overlap.

Indeed, the Fourth Amendment, upon which the plurality principally relies, provides both procedural and substantive protections, and these protections converge. When the Court first held that the right to be free from unreasonable official searches was "implicit in 'the concept of ordered liberty,'" and therefore protected by the Due Process Clause of the Fourteenth Amendment, *Wolf* v. *Colorado*, 338 U. S. 25, 27–28 (1949), it refused to require the States to provide the procedures accorded in federal trials to protect that right.[18] *Id.*, at 28–33. Significantly, however, when we overruled the procedural component of that decision in *Mapp* v. *Ohio*, 367 U. S. 643 (1961), we made it clear that we were "extending the *substantive* protections of due process to all constitutionally unreasonable searches—state or federal . . . ." *Id.*, at 655 (emphasis added).

Moreover, in *Winship*, we found it unnecessary to clarify whether our holding rested on substantive or procedural due process grounds; it was enough to say that the "Due

---

[17] In any event, it should be noted that in presenting his question for review, petitioner invokes the Due Process Clause generally, without reference to "substantive" due process. See Pet. for Cert. i.

[18] Our refusal in *Wolf* to require States to adopt a federal rule of procedure—the exclusionary rule—paralleled our earlier refusal in *Hurtado* to require States to adopt a federal rule of procedure—the grand jury process for ascertaining probable cause. Nevertheless, both cases recognized that the Fourteenth Amendment protected the substantive rights as implicit in the concept of ordered liberty.

Process Clause" itself requires proof beyond a reasonable doubt. 397 U. S., at 364. Similarly, whether the analogous probable-cause standard urged by petitioner is more appropriately characterized as substantive or procedural is not a matter of overriding significance. In either event, the same Due Process Clause operates to protect the individual against the abuse of governmental power, by guaranteeing that no criminal prosecution shall be initiated except on a finding of probable cause.

## V

According to the plurality, the application of certain portions of the Bill of Rights to the States through the Fourteenth Amendment "has substituted, in these areas of criminal procedure, the specific guarantees of the various provisions of the Bill of Rights . . . for the more generalized language contained in the earlier cases construing the Fourteenth Amendment." *Ante,* at 273. The plurality then reasons, in purported reliance on *Graham* v. *Connor,* 490 U. S. 386 (1989), that because the Fourth Amendment is designed to address pretrial deprivations of liberty, petitioner's claim must be analyzed under that Amendment alone. *Ante,* at 273–274. In the end, however, THE CHIEF JUSTICE concludes that he need not consider petitioner's claim under the Fourth Amendment after all, because that question was not presented in the petition for certiorari. *Ante,* at 275.

There are two glaring flaws in the plurality's analysis. First, the pretrial deprivation of liberty at issue in this case is addressed by a particular Amendment, but not the Fourth; rather, it is addressed by the Grand Jury Clause of the Fifth Amendment. That the Framers saw fit to provide a specific procedural guarantee against arbitrary accusations indicates the importance they attached to the liberty interest at stake. Though we have not required the States to use the grand jury procedure itself, it by no means follows that the underlying liberty interest is unworthy of Fourteenth Amendment

protection. As we explained in *Hurtado*, "bulwarks" of protection such as the Magna Carta and the Due Process Clause "guarantee not particular forms of procedure, but the very substance of individual rights to life, liberty, and property." [19]

Second, and of greater importance, the cramped view of the Fourteenth Amendment taken by the plurality has been rejected time and time again by this Court. In his famous dissenting opinion in *Adamson* v. *California*, 332 U. S. 46, 89–92 (1947), Justice Black took the position that the Due Process Clause of the Fourteenth Amendment makes the entire Bill of Rights applicable to the States. As a corollary, he advanced a theory not unlike that endorsed today by THE CHIEF JUSTICE and JUSTICE SCALIA: that the express guarantees of the Bill of Rights mark the outer limit of Due Process Clause protection. *Ibid.* What is critical, for present purposes, is that the *Adamson* majority rejected this contention and held instead that the "ordered liberty" protected by the Due Process Clause is not coextensive with the specific provisions of the first eight Amendments to the Constitution. Justice Frankfurter's concurrence made this point perfectly clear:

> "It may not be amiss to restate the pervasive function of the Fourteenth Amendment in exacting from the States observance of basic liberties. . . . The Amendment neither comprehends the specific provisions by which the founders deemed it appropriate to restrict the federal government nor is it confined to them. The Due Process Clause of the Fourteenth Amendment has an independent potency . . . ." *Id.*, at 66.

In the years since *Adamson*, the Court has shown no inclination to reconsider its repudiation of Justice Black's posi-

---

[19] *Hurtado* v. *California*, 110 U. S. 516, 532 (1884). See n. 2, *supra*.

tion.[20]  Instead, the Court has identified numerous violations of due process that have no counterparts in the specific guarantees of the Bill of Rights.  And contrary to the suggestion of the plurality, *ante*, at 271–272, 273, these decisions have not been limited to the realm outside criminal law.  As I have already discussed, it is the Due Process Clause itself, and not some explicit provision of the Bill of Rights, that forbids the use of perjured testimony and the suppression of evidence favorable to the accused.[21]  Similarly, we have held that the Due Process Clause requires an impartial judge,[22] and prohibits the use of unnecessarily suggestive identification procedures.[23]  Characteristically, Justice Black was the sole dissenter when the Court concluded in *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966), that the failure to control disruptive influences in the courtroom constitutes a denial of due process.

Perhaps most important, and virtually ignored by the plurality today, is our holding in *In re Winship* that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt."  397 U. S., at 364.  Because the reasonable-doubt standard has no explicit textual source in the Bill of Rights, the *Winship* Court was faced with precisely the same argument now advanced by THE CHIEF JUSTICE and JUSTICE SCALIA: Noting the procedural guarantees for which the Bill of Rights specifically provides in criminal cases, Justice Black maintained that "[t]he Constitution thus goes into some detail to spell out what kind

---

[20] Indeed, no other Justice has joined Justice Black in maintaining that the scope of the Due Process Clause is limited to the specific guarantees of the Bill of Rights.  Although Justice Douglas joined Justice Black in dissent in *Adamson*, he later retreated from this position.  See, *e. g., Griswold* v. *Connecticut*, 381 U. S. 479, 484 (1965); L. Tribe, American Constitutional Law § 11–2, p. 774, and n. 32 (2d ed. 1988).

[21] See n. 15, *supra*.

[22] *Tumey* v. *Ohio*, 273 U. S. 510 (1927).

[23] *Stovall* v. *Denno*, 388 U. S. 293, 302 (1967).  Justice Black dissented. *Id.*, at 303–306.

of trial a defendant charged with crime should have, and I believe the Court has no power to add to or subtract from the procedures set forth by the Founders." *Id.*, at 377 (dissenting opinion). Holding otherwise, the *Winship* majority resoundingly rejected this position, which Justice Harlan characterized as "fl[ying] in the face of a course of judicial history reflected in an unbroken line of opinions that have interpreted due process to impose restraints on the procedures government may adopt in its dealing with its citizens . . . ." *Id.*, at 373, n. 5 (concurring opinion).

Nevertheless, THE CHIEF JUSTICE and JUSTICE SCALIA seem intent on resuscitating a theory that has never been viable, by reading our opinion in *Graham* v. *Connor* more broadly than our actual holding. In *Graham*, which involved a claim of excessive force in the context of an arrest or investigatory stop, we held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U. S., at 395. Under *Graham*, then, the existence of a specific protection in the Bill of Rights that is incorporated by the Due Process Clause may preclude what would in any event be redundant reliance on a more general conception of liberty.[24] Nothing in *Graham*, however, forecloses a general due process claim when a more specific source of protection is absent or, as here, open to question. See *ante*, at 275 (reserving ques-

---

[24] Moreover, it likely made no difference to the outcome in *Graham* that the Court rested its decision on the Fourth Amendment rather than the Due Process Clause. The text of the Fourth Amendment's prohibition against "unreasonable" seizures is no more specific than the Due Process Clause's prohibition against deprivations of liberty without "due process." Under either provision, the appropriate standards for evaluating excessive force claims must be developed through the same common-law process of case-by-case adjudication.

tion whether Fourth Amendment protects against filing of charges without probable cause).

At bottom, the plurality opinion seems to rest on one fundamental misunderstanding: that the incorporation cases have somehow "substituted" the specific provisions of the Bill of Rights for the "more generalized language contained in the earlier cases construing the Fourteenth Amendment." *Ante,* at 273. In fact, the incorporation cases themselves rely on the very "generalized language" THE CHIEF JUSTICE would have them displacing.[25] Those cases add to the liberty protected by the Due Process Clause most of the specific guarantees of the first eight Amendments, but they do not purport to take anything away; that a liberty interest is not the subject of an incorporated provision of the Bill of Rights does not remove it from the ambit of the Due Process Clause. I cannot improve on Justice Harlan's statement of this settled proposition:

> "[T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This 'liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreason-

---

[25] See, *e. g., Mapp* v. *Ohio,* 367 U. S. 643, 655 (1961) (applying the exclusionary rule to the States because "without that rule the freedom from state invasions of privacy would be so ephemeral . . . as not to merit this Court's high regard as a freedom 'implicit in the concept of ordered liberty'"); *Benton* v. *Maryland,* 395 U. S. 784, 794 (1969) (holding that "the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment"); *Duncan* v. *Louisiana,* 391 U. S. 145, 149 (1968) ("Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee").

able searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints . . . and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Poe* v. *Ullman,* 367 U. S. 497, 543 (1961) (dissenting opinion).

I have no doubt that an official accusation of an infamous crime constitutes a deprivation of liberty worthy of constitutional protection. The Framers of the Bill of Rights so concluded, and there is no reason to believe that the sponsors of the Fourteenth Amendment held a different view. The Due Process Clause of that Amendment should therefore be construed to require a responsible determination of probable cause before such a deprivation is effected.

## VI

A separate comment on JUSTICE GINSBURG's opinion is appropriate. I agree with her explanation of why the initial seizure of petitioner continued until his discharge and why the seizure was constitutionally unreasonable. Had it been conducted by a federal officer, it would have violated the Fourth Amendment. And, because unreasonable official seizures by state officers are deprivations of liberty or property without due process of law, the seizure of petitioner violated the Fourteenth Amendment. Accordingly, JUSTICE GINSBURG is correct in concluding that the complaint sufficiently alleges a cause of action under 42 U. S. C. § 1983.

Having concluded that the complaint states a cause of action, however, her opinion does not adequately explain why a dismissal of that complaint should be affirmed. Her submission, as I understand it, rests on the propositions that (1) petitioner abandoned a meritorious claim based on the component of the Due Process Clause of the Fourteenth Amendment that is coterminous with the Fourth Amend-

ment; and (2) the Due Process Clause provides no protection for deprivations of liberty associated with the initiation of a criminal prosecution unless an unreasonable seizure occurs. For reasons already stated, I firmly disagree with the second proposition.

In the Bill of Rights, the Framers provided constitutional protection against unfounded felony accusations in the Grand Jury Clause of the Fifth Amendment and separate protection against unwarranted arrests in the Fourth Amendment. Quite obviously, they did not regard the latter protection as sufficient to avoid the harm associated with an irresponsible official accusation of serious criminal conduct. Therefore, although in most cases an arrest or summons to appear in court may promptly follow the initiation of criminal proceedings, the accusation itself causes a harm that is analytically, and often temporally, distinct from the arrest. In this very case, the petitioner suffered a significant injury *before* he voluntarily surrendered.[26] In other cases a significant

---

[26] The petitioner was deprived of a constitutionally protected liberty interest at the moment that he was formally charged with a crime—an event that occurred *prior* to his seizure, and *several months prior* to the preliminary hearing. I agree with JUSTICE GINSBURG that the officer's incomplete testimony at the preliminary hearing perpetuated the violation of petitioner's right to be free from unreasonable seizure, *ante,* at 279, but it also perpetuated the violation of his right to be free from prosecution absent probable cause. As such, contrary to her suggestion, *ante,* at 277, n. 1, either constitutional violation—the prosecution absent probable cause or the unreasonable seizure—can independently support an action under 42 U. S. C. § 1983.

Furthermore, although JUSTICE GINSBURG speculates that respondent may be fully protected from damages liability by an immunity defense, *ante,* at 279, and n. 5, that issue is neither free of difficulty, cf. *Buckley* v. *Fitzsimmons,* 509 U. S. 259 (1993), nor properly before us. See plurality opinion, *ante,* at 269, n. 3. The question on which we granted certiorari is whether the initiation of criminal charges absent probable cause is a deprivation of liberty protected by the Due Process Clause. Neither the fact that the seizure caused by petitioner's arrest also deprived him of liberty, nor the possible availability of an affirmative defense, is a sufficient reason for failing to discuss or decide this question. The question

interval may separate the formal accusation from the arrest, possibly because the accused is out of the jurisdiction or because of administrative delays in effecting the arrest.[27]

Because the constitutional protection against unfounded accusations is distinct from, and somewhat broader than, the protection against unreasonable seizures, there is no reason why an abandonment of a claim based on the seizure should constitute a waiver of the claim based on the accusation. Moreover, a case holding that allegations of police misconduct in connection with an arrest or seizure are adequately reviewed under the Fourth Amendment's reasonableness standard, *Graham* v. *Connor*, 490 U. S. 386 (1989), tells us nothing about how unwarranted accusations should be evaluated.

*Graham* merely held that the due process right to be free from police applications of excessive force when state officers effect a seizure is governed by the same reasonableness standard as that governing seizures effected by federal officers. *Id.*, at 394–395. In the unlawful seizure context exemplified by *Graham*, there is no need to differentiate between a so-called Fourth Amendment theory and a substantive due process theory because they are coextensive.[28] Whether viewed through a Fourth Amendment lens or a sub-

---

whether one is protected by the Due Process Clause from unfounded prosecutions has implications beyond whether damages are ultimately obtainable. Indeed, in this very case petitioner's complaint sought injunctive relief in addition to damages.

[27] See, *e. g., Doggett* v. *United States*, 505 U. S. 647 (1992) (time lag between indictment and arrest of $8^1/2$ years due in part to the defendant's absence from the country and in part to the Government's negligence).

[28] It is worthwhile to emphasize that the Fourth Amendment itself does not apply to state actors. It is only because the Court has held that the privacy rights protected against federal invasion by that Amendment are implicit in the concept of ordered liberty protected by the Due Process Clause of the Fourteenth Amendment that the Fourth Amendment has any relevance in this case. Strictly speaking, petitioner's claim is based entirely and exclusively on the Fourteenth Amendment's Due Process Clause.

stantive due process lens, the substantive right protected is the same.

When, however, the scope of the Fourth Amendment protection does not fully encompass the liberty interest at stake—as in this case—it is both unwise and unfair to place a blinder on the lens that focuses on the specific right being asserted. Although history teaches us that the Fourth and Fifth Amendments have been viewed "as running 'almost into each other,'" *Mapp* v. *Ohio*, 367 U. S., at 646, quoting *Boyd* v. *United States*, 116 U. S. 616, 630 (1886), and citing *Entick* v. *Carrington*, 19 How. St. Tr. 1029 (C. P. 1765), we have never previously thought that the area of overlapping protection should constrain the independent protection provided by either.

## VII

Although JUSTICE SOUTER leaves open the possibility that in some future case, a due process claim could be stated for a prosecution absent probable cause, he concludes that this' is not such a case. He is persuaded that the federal remedy for Fourth Amendment violations provides an adequate justification for refusing to "'break new ground'" by recognizing the "novel due process right" asserted by petitioner. *Ante*, at 287, 288. Like THE CHIEF JUSTICE, *ante*, at 271, 275, and JUSTICE GINSBURG, *ante*, at 281, he points to *Collins* v. *Harker Heights*, 503 U. S. 115 (1992), as a pertinent example of our reluctance "to expand the concept of substantive due process . . . in [an] unchartered area." *Id.*, at 125. Our relevant holding in that case was that a city's failure to provide an employee with a reasonably safe place to work did not violate the Federal Constitution. We unanimously characterized the petitioner's constitutional claim as "unprecedented." *Id.*, at 127. The contrast between *Collins* and this case could not be more stark.

The lineage of the constitutional right asserted in this case dates back to the Magna Carta. See n. 2, *supra*. In an

early Massachusetts case, Chief Justice Shaw described it as follows:

> "The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury, in case of high offences, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty." *Jones* v. *Robbins*, 74 Mass. 329, 344 (1857).

Moreover, most of the Courts of Appeals have treated claims of prosecutions without probable cause as within "the ambit of compensability under the general rule of 42 U. S. C. § 1983 liability," see *ante*, at 289–290 (SOUTER, J., concurring in judgment). See, *e. g., Golino* v. *New Haven*, 950 F. 2d 864, 866–867 (CA2 1991) (and case cited therein), cert. denied, 505 U. S. 1221 (1992); *Robinson* v. *Maruffi*, 895 F. 2d 649, 654–657 (CA10 1990) (citing cases); *Torres* v. *Superintendent of Police of Puerto Rico*, 893 F. 2d 404, 408 (CA1 1990) (citing cases, and finding cause of action if "egregious"); *Goodwin* v. *Metts*, 885 F. 2d 157, 162 (CA4 1989) (citing cases), cert. denied, 494 U. S. 1081 (1990); *Rose* v. *Bartle*, 871 F. 2d 331, 348–349 (CA3 1989) (citing cases); *Strength* v. *Hubert*, 854 F. 2d 421 (CA11 1988); *Wheeler* v. *Cosden Oil & Chemical Co.*, 734 F. 2d 254 (CA5 1984).

Given the abundance of precedent in the Courts of Appeals, the vintage of the liberty interest at stake, and the fact that the Fifth Amendment categorically forbids the Federal Government from initiating a felony prosecution without presentment to a grand jury, it is quite wrong to characterize petitioner's claim as an invitation to enter unchartered territory. On the contrary, the claim is manifestly of constitutional dimension.

This conclusion should end our inquiry. Whether the Due Process Clause in any given case may provide a "duplication of protections," *ante*, at 287 (SOUTER, J., concurring in judgment) is irrelevant to whether a liberty interest is at stake.[29] Even assuming the dubious proposition that, in this case, due process protection against a baseless prosecution may not provide "a substantial increment to protection otherwise available," *ibid.*,[30] that is a consideration relevant only to damages, not to the existence of constitutional protection. Furthermore, that few of petitioner's injuries flowed *solely* from the filing of the charges against him does not make those injuries insubstantial. To the contrary, I can think of few powers that the State possesses which, if arbitrarily imposed, can harm liberty as substantially as the filing of criminal charges.

---

[29] JUSTICE SOUTER relies in part upon "pragmatic concerns about subjecting government actors to two (potentially inconsistent) standards for the same conduct." *Ante*, at 287. I see no basis for that concern in this case. Moreover, Congress properly weighs "pragmatic concerns" when it decides whether to provide a remedy for a violation of federal law. Such concerns motivated the enactment of § 1983—a statute that provides a remedy for constitutional violations. Thus, if such a violation is alleged—and I am satisfied that one is here—we have a duty to enforce the statute without examining pragmatic concerns.

[30] It seems to me quite wrong to attribute to a subsequent arrest the reputational and other harms caused by an unjustified accusation. In addition, although JUSTICE GINSBURG is prepared to hold that a Fourth Amendment claim does not accrue until the baseless charges are dismissed, at least some of the Courts of Appeals have held that the arrest triggers the running of the statute of limitations. See, *e. g., Rose* v. *Bartle,* 871 F. 2d 331, 351 (CA3 1989); *McCune* v. *Grand Rapids,* 842 F. 2d 903, 906 (CA6 1988); *Mack* v. *Varelas,* 835 F. 2d 995, 1000 (CA2 1987); *Venegas* v. *Wagner,* 704 F. 2d 1144, 1146 (CA9 1983). And, given the disposition of this case, a majority of this Court might agree. In any event, uncertainties about such matters counsel against constitutional adjudication based upon "pragmatic concerns."

## VIII

While the supposed adequacy of an alternative federal remedy persuades JUSTICES GINSBURG and SOUTER that petitioner's claim fails, the availability of an alternative state remedy convinces JUSTICE KENNEDY. I must therefore explain why I do not agree with his reliance on *Parratt* v. *Taylor*, 451 U. S. 527 (1981). In 1975, I helped plant the seed that ultimately flowered into the *Parratt* doctrine. See *Bonner* v. *Coughlin*, 517 F. 2d 1311, 1318–1319 (CA7 1975), modified en banc, 545 F. 2d 565 (1976), cert. denied, 435 U. S. 932 (1978) (cited in *Parratt* v. *Taylor*, 451 U. S., at 541–542). The plaintiff in *Bonner*, like the plaintiff in *Parratt*, claimed that the negligence of state agents had deprived him of a property interest "without due process of law." In both cases, the claim was rejected because a predeprivation remedy was infeasible and the State's postdeprivation remedy was considered adequate to prevent a constitutional violation. *Parratt* v. *Taylor*, 451 U. S., at 543–544; *Bonner* v. *Coughlin*, 517 F. 2d, at 1319–1320. Both of those cases involved the type of ordinary common-law tort that can be committed by anyone. Such torts are not deprivations "without due process" simply because the tortfeasor is a public official.

The rationale of those cases is inapplicable to this case whether one views the claim at issue as substantive or procedural.[31] If one views the petitioner's claim as one of substantive due process, *Parratt* is categorically inapplicable. *Zinermon* v. *Burch*, 494 U. S. 113, 125 (1990). Conversely, if one views his claim as one of procedural due process, *Parratt* is also inapplicable, because its rationale does not apply to officially authorized deprivations of liberty or property.

---

[31] See 1 S. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983, § 3.15, pp. 211–212 (3d ed. 1991).

Thus, contrary to JUSTICE KENNEDY's conclusion, *ante*, at 285, *Parratt*'s "precedential force" does not dispose of this case. Petitioner was subjected to criminal charges by an affirmative, deliberate act of a state official.[32] The filing of criminal charges is effectuated through established state procedures under which government agents, such as respondent Oliver, are authorized to act.[33] In addition, the State's authorized agent knows precisely when the deprivation of the liberty interest to be free from criminal prosecution will occur—the moment that the charges are filed.[34] Therefore, as with arrest or imprisonment, the State is capable of providing a reasoned predeprivation determination, at least *ex parte*, prior to the commencement of criminal proceedings.[35] See *Zinermon* v. *Burch*, 494 U. S., at 136–139. Failure to do so, or to do so in a meaningful way, see *supra*, at 298–300, is constitutionally unacceptable.[36] Thus, notwithstanding the possible availability of a state tort action for malicious prosecution, § 1983 provides a federal remedy for the constitutional violation alleged by petitioner. *Monroe* v. *Pape*, 365 U. S. 167, 183 (1961) ("The federal remedy is supplementary to the

---

[32] This case is thus distinguishable from *Hudson* v. *Palmer*, 468 U. S. 517 (1984), in which petitioner alleged that a prison guard intentionally destroyed his property. *Id.*, at 533 (holding that the Due Process Clause is not violated by random and unauthorized intentional deprivations of property "until and unless it provides or refuses to provide a suitable postdeprivation remedy").

[33] See n. 14, *supra*.

[34] The *Parratt* doctrine is also inapplicable here because it does not apply to cases in which the constitutional deprivation is complete when the tort occurs. *Zinermon* v. *Burch*, 494 U. S. 113, 125 (1990) (citing *Daniels* v. *Williams*, 474 U. S. 327, 338 (1986) (STEVENS, J., concurring in judgments)); see *supra*, at 313.

[35] See, *e. g.*, *Gerstein* v. *Pugh*, 420 U. S., at 114 (holding that the Fourth Amendment, as applied to the States through the Due Process Clause of the Fourteenth Amendment, "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest").

[36] See, *e. g.*, *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 435–437 (1982).

state remedy, and the latter need not be first sought and refused before the federal one is invoked") (overruled in part not relevant here, *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 664–689 (1978)).

The remedy for a violation of the Fourteenth Amendment's Due Process Clause provided by § 1983 is not limited, as JUSTICE KENNEDY posits, *ante*, at 285, to cases in which the injury has been caused by "a state law, policy, or procedure." One of the primary purposes of § 1983 was to provide a remedy "against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law." *Monroe* v. *Pape*, 365 U. S., at 175–176 (emphasis in original). Therefore, despite his suggestion to the contrary, *ante*, at 285, JUSTICE KENNEDY's interpretation of *Parratt* is in direct conflict with both the language and the purposes of § 1983. See *Monroe* v. *Pape*, 365 U. S., at 172–187.

Section 1983 provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U. S. C. § 1983. The *Parratt* doctrine is reconcilable with § 1983 only when its application is limited to situations in which no constitutional violation occurs. In the context of certain deprivations of property, due process is afforded—and therefore the Constitution is not violated—if an adequate postdeprivation state remedy is available in practice to provide either the property's prompt return or an equivalent compensation. See *Bonner* v. *Coughlin*, 517 F. 2d, at 1320. In other contexts, however, including criminal cases and most cases involving a deprivation of liberty, the deprivation is complete, and the Due Process Clause has been violated, when the loss of liberty occurs.[37] In those contexts, any postdeprivation

---

[37] Postdeprivation procedures may provide adequate due process for deprivations of liberty in limited circumstances. See, *e. g., Zinermon* v. *Burch*, 494 U. S., at 132 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . or

state procedure is merely a remedy; because it does not provide the predeprivation process that is "due," it does not avoid the constitutional violation. In such cases, like this one, § 1983 provides a federal remedy regardless of the adequacy of the state remedy. *Monroe* v. *Pape*, 365 U. S., at 183.

## IX

The Court's judgment of affirmance is supported by five different opinions. Significantly, none of them endorses the reasoning of the Court of Appeals, and none of them commands a majority. Of greatest importance, in the aggregate those opinions do not reject my principal submission: the Due Process Clause of the Fourteenth Amendment constrains the power of state governments to accuse a citizen of an infamous crime.

I respectfully dissent.

---

where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process"); *Daniels* v. *Williams*, 474 U. S., at 342 (STEVENS, J., concurring in judgments) (noting that *Parratt* could defeat a procedural due process claim that alleged a deprivation of liberty when "a predeprivation hearing was definitionally impossible"); *Ingraham* v. *Wright*, 430 U. S. 651, 701 (1977) (STEVENS, J., dissenting) (disagreeing with the Court's holding that the State's postdeprivation remedies for corporal punishment in the schools satisfied the Due Process Clause, but noting that "a postdeprivation remedy is sometimes constitutionally sufficient").