STEWART, Circuit Judge,
Dissenting:
I agree with the majority’s conclusion that the threshold issue to be decided in this case is the standard of law that should be applied to examine pretrial excessive force claims, however I disagree with the majority’s conclusion that the Due Process Clause and not the Fourth Amendment provides the applicable standard of law. The majority relies on Valencia v. Wiggins, 981 F.2d 1440 (5th Cir.1993), cert. denied, — U.S. —, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), to conclude that Brothers was not protected by the Fourth Amendment; however, I do not share my colleagues’ confidence that Valencia is dispositive of the instant issue.
In Valencia, this Court held that the Due Process Clause and not the Fourth Amendment provided the applicable legal standard to adjudicate claims of excessive force. Valencia, 981 F.2d at 1445. However, the Valencia court rooted its decision primarily in the fact that the plaintiff had been in custody for three weeks before the disputed incident, id. at 1444, a fact not emphasized by the majority opinion in Brothers. Noting that the Supreme Court had been reluctant to extend Fourth Amendment protection beyond the initial arrest, this Court concluded that when a suspect has been in custody for an extended period of time, the Due Process Clause and not the Fourth Amendment provided the applicable constitutional standard to analyze claims of excessive force. Id. at 1444-45.[8] However, the crucial factor in the Valencia analysis — the extended period of time between the arrest and the challenged use of force — is absent in this ease. Thus, Valencia does not apply to the present case where Brothers was killed shortly after his arrest.
In my view, Albright v. Oliver, — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) resolved the doubts expressed in Valencia about extending the protection of the Fourth Amendment beyond the time of arrest. In Albright, the petitioner claimed that his Due Process rights had been violated when the State of Illinois initiated criminal proceedings against him for committing non-criminal acts. The petitioner had surrendered himself when he learned of an outstanding warrant for his arrest, and was conditionally released after posting bond. . He deliberately decided to pursue his claim before the U.S. Supreme Court only under the Due Process Clause and did not pursue a possible Fourth Amendment violation. A plurality of the Supreme Court held that his claim was governed exclusively by the Fourth Amendment and that he could not recover for a violation of his substantive Due Process rights. Id., — U.S. at —, 114 S.Ct. at 813. Justice Souter concurred, but did not join, in the plurality opinion, noting that “... none of petitioner’s alleged injuries has been treated by the Courts of Appeals as beyond the ambit of compensability under the general rule of 42 U.S.C. § 1983 liability for a seizure unlawful under Fourth Amendment standards ... ”, Id., — U.S. at —, 114 S.Ct. at 821, and that hams such as those claimed by the petitioner “have naturally coalesced under the Fourth Amendment, since the injuries usually occur only after an arrest or other Fourth Amendment seizure ... ”. Id., — U.S. at —, 114 S.Ct. at 822.
In Albright, the petitioner had been “seized” by his arrest and his conditional release after posting bond. Five members of the Court agreed that a Fourth Amendment analysis, and not a Due Process Clause analysis, applied to the petitioner’s 42 U.S.C. § 1983 claims. See the plurality opinion, id., along with the concurrence by Justice Souter, — U.S. at —-—, 114 S.Ct. at 819-822. Thus, the Supreme Court has extended the protection of the Fourth Amendment beyond the time of arrest or the initial act of restraining an individual’s liberty. I read Albright as pronouncing precisely the *459 scope of Fourth Amendment protection that the majority denies in the instant ease. As stated in Albright, id. — U.S. at —, 114 S.Ct. at 813 (emphasis added),
The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.
This observation provides a greater basis for concluding that the Fourth Amendment is the applicable standard of analysis in this case than Valencia does for concluding that the Fourth Amendment does not apply. The concern expressed in Valencia, regarding whether Fourth Amendment protection extends beyond the initial arrest, has been answered by the Supreme Court in the affirmative.
In Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (emphasis added), the Supreme Court stated that,
Whenever an officer restrains the freedom of a person to walk away, he has seized that person. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). While it is not always clear just when minimal police interference becomes a seizure, see United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment
Accordingly, the Fourth Amendment is applicable to the instant case.
Garner, id., compels a judgment in Brothers’ favor regarding the constitutionality of the Harris County policy. In Gamer, pursuant to a statute that allowed the use of deadly force to apprehend all felony suspects, a police officer had shot a burglary suspect as he tried to escape. The Supreme Court determined that the Tennessee statute was unconstitutional as applied to unarmed, non-dangerous fleeing suspects because it violated the Fourth Amendment’s prohibition against unreasonable searches and seizures. Id. 471 U.S. at 11, 105 S.Ct. at 1701. Accordingly, the Court held the Tennessee statute “invalid insofar as it purported to give [the officer] the authority to act as he did”. Id. at 22, 105 S.Ct. at 1707. In so holding, the Court stated that:
[T]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. Id. at 11, 105 S.Ct. at 1701. (emphasis added).
This principle is applicable to the case before us now.
Each of the deputies stated in his deposition that they had no reason to think that Brothers would pose a threat to them or anybody else.[9] Both deputies also testified that they did not think that he was a danger to the outside community. Given the uncon-tradicted testimony that Brothers posed no danger beyond the risk of his escape, the Harris County policy which allowed this use of deadly force is unconstitutional as applied to Brothers because it violated the Fourth Amendment prohibition against an unreasonable seizure. Under Tennessee v. Garner, supra, this policy can provide no shield from liability for the defendants.
For the foregoing reasons, I respectfully dissent.

. As observed in Valencia, other Circuits have concluded that the Fourth Amendment standard applies to various post-arrest, pre-arraignment custodial settings. See Valencia, 981 F.2d at 1444, footnotes 9-12 and the accompanying text.

. The record reflects that one of the officers considered all escapees to be dangerous and therefore considered Brothers to be dangerous because he was an escapee. When asked whether he had any reason to believe that Brothers was dangerous, he replied "No.”