Raymond A. BARNES, et al., Plaintiffs,

v.

MARYLAND NATIONAL CAPITAL PARK AND PLANNING COMMISSION, et al., Defendants.

Civil No. PJM 95–3574.

United States District Court,
D. Maryland.

July 3, 1996.

John Paul Szymkowicz, Washington, DC, for Plaintiffs.

Charles W. Thompson, Jr., James L. Parsons, Jr., Linda Berk Thall, County Attorney's Office, Rockville, MD, Richard M. Kastendieck, Assistant Attorney General, Pikesville, MD, J. Joseph Curran, Jr., Attorney General's Office, Baltimore, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

Raymond A. Barnes, Deborah Louise Barnes, and Raymond A. Barnes as parent and next friend of Raymond A. Barnes, Jr. sue the Maryland National Capital Park and Planning Commission (MNCPPC) and two of its police officers, James Richards and "John Doe," for violations of 42 U.S.C. §§ 1983 and 1985 and for various common-law torts.[1] Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which Plaintiffs oppose. The Court will GRANT Defendants' Motion for Summary Judgment.[2]

---

1. Claims against the MNCPPC Police Department and the Maryland State Police have previously been dismissed by the Court.

2. Since both parties have referred to matters outside the pleadings, i.e. affidavits, the Motion to Dismiss will be treated as one for summary judgment. See Fed.R.Civ.P. 12(b).

## II.

Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.

## III.

These are the undisputed facts:

Raymond and Deborah Barnes, African–Americans, are the parents of Raymond A. Barnes, Jr., who was two years old at the time of the events in question. On November 24, 1994, at approximately 11:30 p.m., Barnes was driving Southbound on Branch Avenue near the intersection of Malcolm Road, in Clinton, Maryland. MNCPPC Police Officer James Richards observed Barnes operating at a high rate of speed and making unsafe lane changes and pulled his car over onto the side of the road. The officer detected a strong odor of alcoholic beverages on Barnes' breath and asked him to exit his vehicle. When Barnes was unable to complete field sobriety tests, Richards arrested him for driving under the influence of alcohol.

While standing next to Barnes' car, Richards observed a small child in the back seat without a child safety seat. Before transporting Barnes to a nearby police facility for processing, it was necessary for Richards to make arrangements for the child. As it happened, before transporting Barnes, Richards was joined by Officer "John Doe" (since identified as John Hudock),[3] who undertook to look after the child. Hudock determined to keep the child in Barnes' vehicle, turning on the heat to keep him warm. Before departing the scene, Richards advised Barnes that

it was a violation of State law to drive with a child under age four or forty pounds without a safety seat.[4] He explained that the officers would not transport the child from the scene without a safety seat and that arrangements would have to be made to obtain a seat. Barnes told Richards that Barnes' wife had such a seat and gave Richards her phone number. Richards then transported Barnes to the State Police Barracks leaving Hudock at the scene with the child. Mrs. Barnes, having been contacted, arrived at the scene at approximately 1:30 a.m. with the safety seat.

Barnes, Sr. was eventually charged with speeding, driving while intoxicated, and driving without a child safety seat. He paid the citations for speeding and driving without a child safety seat and pleaded guilty to the charge of driving while intoxicated.

On this foundation, Plaintiffs construct claims of 1) violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments; 2) violation of 42 U.S.C. § 1985; 3) intentional infliction of emotional distress; and 4) negligent supervision.[5] They argue that Defendants' policies with respect to child safety seats deprived the senior Barnes' of their child's companionship and made them fearful for their child's safety; that the officers deprived the child of his constitutional rights because he was left unsupervised in a car on the side of the road on a cold night; and that Plaintiffs were discriminated against because of their race, age, and socioeconomic class. The Court unhesitatingly concludes that Plaintiff's claims are completely devoid of merit.

## IV.

Section 1983 is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). In evaluating a § 1983

---

**3.** Plaintiffs have filed a Motion to Amend Complaint to substitute John Hudock for John Doe. That Motion is rendered MOOT by this Opinion.

**4.** Md.Code Ann.Transp. § 22–412.2(d)(1992).

**5.** The Complaint is not divided into separate causes of action. However, the causes of action are characterized in Defendants' Motion for Summary Judgment and are not disputed in Plaintiffs' Opposition. The Court will therefore accept the characterizations set forth in Defendants' pleading.

claim, the court must first identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Plaintiffs here allege violations of their Fifth Amendment right to due process of law and their Fourteenth Amendment right to equal protection of the law based on their race and socioeconomic class.

### A. *Parents' claim*

█ Barnes, Sr. does not allege constitutional violations with respect to his own arrest. Instead he claims deprivation of life, liberty, and property by reason of his separation from his child. Mrs. Barnes makes an identical claim. The problem is that no such cause of action is recognized in this circuit. The Court of Appeals for the Fourth Circuit so held in *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir.1994): "[B]ecause the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting family only incidentally, we decline to sanction such a claim at the present time." 13 F.3d at 805. In *Shaw* the family member was shot and killed and no 1983 claim could proceed. Here the family member was only detained in a heated car on a cold night for two hours. The senior Barnes' have no § 1983 claim for any alleged constitutional tort involving their child.

### B. *Child's claim*

█ In contrast, Raymond Barnes, Jr. was directly affected by police conduct, i.e. he was detained. Because his detention involved a "seizure" by a police officer, proper analysis involves the Fourth, not the Fifth or Fourteenth, Amendments. *See Graham*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (excessive force context); *see also Albright v. Oliver*, 510 U.S. 266, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (plurality) (pretrial deprivation of liberty context).

█ The Supreme Court's analysis in *Graham*, while not directly applicable, is suggestive:

> Today we ... hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (italics in original). By extension, any physically intrusive measures used by police in effecting seizures—even where physical force is not used—trigger a Fourth Amendment analysis.

█ That being so, the Fourth Amendment requires police officers' actions to be "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872 (citing *Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978)); *see also Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard").[6]

█ In this case, the actions of Officers Richards and Hudock were objectively reasonable as a matter of law. Richards observed a small child sleeping in the back seat of an arrestee's car without a child safety seat. Maryland law requires that a child under the age of four or forty pounds must be secured in such a seat. Richards appropriately transported Barnes, Sr. to the police station, while leaving the child in the car

6. Plaintiffs have put forth absolutely no facts to support their bare allegations that Richards and Hudock's conduct was motivated by race or socioeconomic status. Accordingly, these allegations merit no further comment.

supervised by Hudock. The child was kept warm for the approximately two hours it took his mother to arrive with a safety seat. Judging these facts against an objective standard, the only reasonable conclusion is that the officers acted in a reasonable manner. No one's Fourth Amendment rights were violated in any manner. Raymond, Jr.'s § 1983 claim cannot stand.

 Plaintiffs' attempted 1983 action against MNCPPC also fails because a municipal entity cannot be sued on the basis of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Even assuming the officers in this case acted pursuant to a custom, policy or procedure of the MNCPPC, what they did was reasonable as a matter of law. The Court will grant summary judgment as to all Section 1983 claims.

## V.

### 1985 Claim

 42 U.S.C. § 1985(3) provides that if two or more persons conspire to deprive any person or class of persons of their constitutional rights and another is injured or deprived of having or exercising any right or privilege as a citizen of the United States, the injured party has a cause of action against the conspirators. Assuming Richards and Hudock acted in concert, however, what they did was perfectly legal, indeed eminently reasonable. Accordingly, there can be no claim of conspiracy to deprive any person of a constitutional right.

## VI.

### State Claims

#### Intentional infliction of emotional distress

 The elements of the tort of intentional infliction of emotional distress under Maryland law are: 1) intentional and reckless conduct; 2) extreme and outrageous conduct; 3) a causal connection between the wrongful conduct and the emotional distress; and 4) emotional distress of a severe nature. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611, 614 (1977). "[T]he tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby,* 326 Md. 663, 670, 607 A.2d 8, 11 (1992). In *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057, cert. denied, 306 Md. 118, 507 A.2d 631 (1986), the Maryland Court of Special Appeals concluded that the level of conduct necessary to satisfy the second element must "completely violate human dignity ... [it] exists only if the average member of the community must regard the defendant's conduct ... as being a complete denial of the plaintiff's dignity as a person ... The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Id.* 502 A.2d at 1059 (citation omitted). Plaintiffs' facts do not come close to establishing any of the four elements. As a matter of law, the officers' conduct did not completely violate human dignity, nor did it "shatter the frame upon which one's emotional fabric is hung." Quite to the contrary, what they did was not only reasonable but commendable.

## VII.

### Negligent supervision

 Finally, Plaintiffs appear to allege MNCPPC's negligent supervision of its police officers. In any act of negligence, there must exist "a duty which is owed by the defendant to the plaintiff to observe that care which the law prescribes in the given circumstances; a breach by the defendant of that duty; damages and injury suffered by the plaintiff as the demonstrable effect of the breach of duty." *State, for Use of Chenoweth v. Baltimore Contracting Co.,* 177 Md. 1, 6 A.2d 625 (1939). Given the reasonableness of the officers' conduct, it is pellucidly clear that they breached no duty they may have owed to Plaintiffs. Defendants are entitled to summary judgment on this as on all other claims.