**Larry FERSNER, Plaintiff**

v.

**PRINCE GEORGE'S COUNTY, MD, et al., Defendants**

**No. CIV AMD 99–3099.**

United States District Court, D. Maryland.

April 11, 2001.

Errol R. Thompson, Silver Spring, MD, for plaintiff.

William A. Snoddy, Sean D. Wallace, John Anthony Bielec, Deputy County Atty., Upper Marlboro, MD, for defendant.

## MEMORANDUM

DAVIS, District Judge.

Pending before the court in this constitutional tort action is the motion for summary judgment filed by defendants as to all of the federal claims. Plaintiff Larry Fersner has filed an opposition to the motion and a hearing has been held. For the reasons set forth below and on the record at the hearing, the motion shall be granted and the federal claims shall be dismissed with prejudice. The state law claims shall be dismissed without prejudice for lack of jurisdiction.

I

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If "the evidence [is] so one-sided that one party must prevail as a matter of law," the court must grant summary judgment in that party's favor. Id. at 268, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir.1991).

Mere speculation cannot stave off a properly supported motion for summary judgment. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). To survive a motion for summary judgment, a party may not rest on its pleadings, but must demonstrate that specific, material facts exist which give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court assumes that all of the non-moving party's evidence is worthy of belief, and all justifiable inferences are to be drawn in favor of the non-moving party. Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986). Only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" can the court grant a motion for summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Proper application of these principles to the record here requires that the federal claims be dismissed with prejudice.

## II

The facts material to the motion are not genuinely disputed. At all times relevant to this case, plaintiff has been a Washington, D.C., police officer in good standing. On November 6, 1996, at about 3:15 a.m., he was driving his personal vehicle on Suitland Road near his home in Prince George's County, Maryland. County police officers Sean Chaney and Adam Popielarcheck (who was a rookie officer assigned to Chaney for field training) were on duty and traveling immediately behind plaintiff's vehicle. The officers pulled over plaintiff and effected a traffic stop. Chaney testified on deposition that he observed plaintiff "weaving" and that, specifically, plaintiff crossed the center yellow line on Suitland Road and then crossed the white lane-control line to his right. On deposition, plaintiff seemingly denied that he crossed the yellow center line; however, in his answer to interrogatory no. 2, he admits that he crossed the center line, but only to avoid hitting cars that were parked to his right.

The ensuing encounter on the street between the law enforcement officers was not a pleasant one. Although in their smallest details, the versions of the encounter provided by plaintiff and by defendants, respectively, vary, the below accounts of the essential, cardinal facts surrounding the encounter do not diverge in any significant way, and no material and genuine dispute of fact has been identified by plaintiff sufficient to avoid summary judgment.

### Plaintiff's Version

Plaintiff contends that defendant Chaney, the senior of the two officers, immediately became hostile, screaming and hollering at him, when the officers approached plaintiff's vehicle after the stop. Plaintiff contends that he immediately placed his hands on the steering wheel where they could be observed by the officers. He announced repeatedly to the officers that he was himself a law enforcement officer and that he was armed. Indeed, plaintiff testified that he gave the "universal" sign that he was a police officer.

Plaintiff was removed from the vehicle and disarmed. Defendant Chaney immediately became "obnoxious" and repeatedly asked plaintiff if he had been drinking. Chaney repeatedly got close to plaintiff's face, asking "over and over" whether plaintiff had been drinking or whether plaintiff was tired, and generally maintaining a "nasty look, attitude on his face." Plaintiff stated repeatedly that he had not been drinking and that, indeed, he does not use alcohol at all. Plaintiff admitted on deposition, however, that he had only had one or two hours of sleep. Plaintiff displayed his police credentials and stated that he was assigned to an undercover investigation. Chaney insisted on knowing plaintiff's specific assignment, but plaintiff would not disclose this information because he did not believe it was necessary to do so.

Plaintiff agreed to take a field sobriety test, the "walk and turn" test. Chaney instructed him how to perform the test: he was to walk in a straight line "heel-to-toe" for nine paces, turn and walk back nine paces in the same manner, without looking down and while counting out loud each step, all while keeping his arms to the side.

Plaintiff walked 11 paces, and then nine paces back. Chaney declared that plaintiff had "failed" the test, and plaintiff disputed this assessment. Plaintiff agreed to perform a second test, the "balance" test, involving standing on one leg, but he insisted on performing the test on flat ground, and not on the incline where he had been detained. Plaintiff never performed this test.

Plaintiff agreed to take a Breathalyzer test, but understood that it would take 60 to 90 minutes for the Breathalyzer unit to be brought to the scene. Thus, plaintiff stated, "If you're going to hold me here [until the Breathalyzer arrives] y'all might as well lock me up!" Whereupon, a sergeant who had arrived on the scene, defendant Alexandre Baily, authorized Chaney to arrest plaintiff for driving under the influence. During the ride to the police station, Chaney told plaintiff that he would not have been arrested if plaintiff had shown proper "respect" to Chaney.

At all times during the encounter, plaintiff believed in his own mind that everything that happened to him happened because he is African–American and all of the defendant officers with whom he came into contact were white. Plaintiff contends that Chaney insisted that Fersner refer to him as "sir" and that Chaney cursed him repeatedly, e.g., "You show some fucking respect," and "Get your hand out of your goddamned pocket." Chaney felt that the officers were attempting to "provoke . . . a fight" with him. Plaintiff felt "small" and during the later sobriety tests conducted at the police station, plaintiff felt like a "chimpanzee."

**Defendants' Version**

Defendants contend that Chaney observed plaintiff weaving on Suitland Road in Prince George's County shortly after 3:00 a.m. on November 6, 1996. Specifically, plaintiff's vehicle crossed the yellow center line and then twice crossed the white line on the right. After following the plaintiff a short distance (apparently slightly more than half a mile, although the officers thought it was more than that), Chaney effected a traffic stop.

Plaintiff had to be told several times to put his hands on the steering wheel. Plaintiff identified himself as a police officer in the neighboring jurisdiction, the District of Columbia. He was disarmed and questioned about his assignment. He would not readily answer questions about his assignment as a police officer. He had only a part of his credentials as a police officer; that is, he had either a badge or an identification card but he did not have both.

Chaney questioned plaintiff as to whether he had been drinking or whether he was tired. Chaney asked these questions because of what he had observed of the plaintiff's driving and because of plaintiff's appearance. Chaney administered the "walk and turn" field sobriety test. Plaintiff failed the test because: (1) he was swaying and unsteady; (2) he took more than the nine steps he had been instructed to take; (3) he put his hand in his pocket, contrary to instructions to leave his hands to his side; and (4) he looked down at his feet.

Chaney was joined at the scene by his supervisor, Sergeant Bailey. Bailey spoke to plaintiff. According to Bailey, plaintiff "had a faraway glaze [sic] over his eyes. His eyes were bloodshot, they were watering." Moreover, based on Bailey's assessment, plaintiff "acted like he almost couldn't comprehend some of the questions" being asked of him. Ultimately, Bailey concluded that plaintiff "appeared

to be under the influence."[1]  This was particularly true, Bailey concluded, after plaintiff refused to attempt the second field sobriety test.  Bailey ordered plaintiff's arrest for operating a vehicle under the influence (of alcohol and/or drugs) and for refusing to take further sobriety tests.

### At the Station

■ Once plaintiff was at the police station, he "agreed to everything."[2]  Thus, he took and passed a Breathalyzer test.  Consequently, to determine whether plaintiff was under the influence of drugs, defendants summoned an officer who was a certified "drug recognition expert," defendant Michael Economes.  Economes conducted a detailed investigation of plaintiff's physical and mental status, consisting of, but not limited to, an interview, a visual examination of plaintiff's nose, mouth and arms, and observation of plaintiff's performance on several sobriety and other physical tests.  Economes concluded that plaintiff was indeed under the influence of drugs and so advised Chaney.[3]  Popielarcheck was given "credit" for the arrest and it was he who issued three citations against plaintiff: (1) driving under the influence of drugs; (2) driving under the influence of controlled dangerous substance; and, (3) failure to drive right of center.  In due course a short time later, with plaintiff's consent, the police transported plaintiff to the hospital to have blood withdrawn.  The blood testing was negative for any controlled dangerous substance.

\*     \*     \*     \*     \*     \*

When the charges against plaintiff came on for trial in the District Court of Maryland for Prince George's County, the driv-

---

1.  Bailey summarized his assessment in the following terms:
    His eyes were bloodshot, his eyes were watery.  His responses to questions, direct questions, were evasive.  He seemed as if he was talking out of [sic] a fog, is the best way I can describe it.  It took him a couple of seconds to acknowledge answers whenever you would ask him a question.  And it just seemed like he—just his demeanor and the way that he was, it appeared to me, even not knowing, that he was under the influence of something.
    Deposition of Alexandre Bailey at 63.

2.  Plaintiff does not contend that the written waiver of rights and the written consents he provided at the station to the further tests and evaluations were involuntary or that they were otherwise obtained in violation of his constitutional rights (apart from what he contends was an arrest in the absence of probable cause). · Accordingly, because plaintiff consented voluntarily to these procedures, he has failed to state a claim pursuant to 42 U.S.C. § 1983 in respect to any such test or evaluation, including Michael Economes's ostensible expert evaluation on the basis of which Economes concluded (erroneously) that plaintiff was under the influence of drugs.

3.  Fersner seems to contend that Economes's conclusion that Fersner was under the influence of drugs, which was shown to be demonstrably erroneous by the subsequent blood test, is simply evidence of Economes's attempt to come to the aid of his fellow officers who had inappropriately arrested an innocent motorist.  To be sure, in light of the many negative findings Economes made in the majority of the sub-tests he administered to Fersner, this contention is not without force.  Moreover, it would be interesting to know how often, if ever, Economes (or other so-called drug use detection experts) render negative conclusions after evaluating a person, like Fersner, who had already been arrested by fellow officers but who passed (by a wide margin) the Breathalyzer tests later administered.  Nevertheless, the record simply has not been developed in these regards, and, as noted *supra* n. 2, plaintiff may not maintain an independent claim against Economes under the facts of this case because he voluntarily agreed to be evaluated by Economes and (for the reasons discussed *infra* ), his detention at the time he gave his consent is not actionable.

ing under the influence charges were *nolle prossed* and plaintiff plead "no contest" to the charge of failure to drive right of center.

## III

Plaintiff has filed an amended complaint containing nine numbered counts. In count I, he asserts a claim against all four individual defendants in their individual capacities pursuant to 42 U.S.C. § 1983. He alleges that they violated the following rights guaranteed to him by the federal constitution: (1) the Fourth Amendment right to be free from unreasonable searches and seizures; (2) the Fourteenth Amendment right to due process;[4] (3) the Fourth Amendment right to be free from a police officer's use of excessive force; (4) the Fourteenth Amendment right to equal protection; (5) the Eighth Amendment right to be free from cruel and unusual punishment; and (6) the alleged Fourth Amendment right to be free "from interference with the [plaintiff's] zone of privacy." In addition, plaintiff alleges in count II what he appears to intend as a municipal liability claim and/or a supervisory liability claim pursuant to 42 U.S.C. § 1983 against the Chief of Police and Prince George's County; in count III a conspiracy claim against the four individual officers pursuant to 42 U.S.C. § 1985(3); and in counts IV through IX, state law claims based on alleged state constitutional violations and common law claims for intentional infliction of emotional distress, negligence, negligent supervision, "respondeat superior," and false arrest and false imprisonment.

For the reasons stated on the record at the hearing, I granted summary judgment as to (or plaintiff abandoned) all of plaintiff's federal claims other than the claims which are based on the Fourth Amendment, whether those claims are regarded as asserted pursuant to 42 U.S.C. § 1983 or pursuant to 42 U.S.C. § 1985(3). *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Lambert v. Williams,* 223 F.3d 257 (4th Cir.2000); *Gooden v. Howard County, Maryland,* 954 F.2d 960, 969–70 (4th Cir.1992)(*en banc*).[5]

In their motion, defendants challenge the viability of the federal claims, *inter alia,* on the grounds that (1) the stop, detention, arrest and prosecution of plaintiff did not violate any clearly established right of plaintiff secured by the Fourth Amendment, and (2) even if the officers committed one or more errors of constitutional magnitude in effecting the stop, arrest and prosecution of plaintiff, nevertheless, they are entitled to the benefit of the qualified immunity defense long recognized under settled Supreme Court and Fourth Circuit precedent. I am constrained to agree with defendants. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)(explicating analytical paradigm in evaluating constitutional claims and the qualified immunity defense asserted in cases arising under § 1983); *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)(same); *Anderson v. Russell,* 247 F.3d 125 (4th Cir.2001)(explicating Fourth Amendment standards); *Milstead v. Kibler,* 243 F.3d 157 (4th Cir.2001)(same);

---

**4.** The ostensible due process claim is pleaded as a procedural due process claim ("The right not to be deprived of life or liberty without due process ....") but at the hearing on the motion for summary judgment, it seems plaintiff attempted to assert a substantive due process claim.

**5.** Despite Fersner's visceral certainty that his treatment by the defendants was a function of the fact that he is African–American, there is not a scintilla of evidence in the record that any of the defendants acted out of any racial animus.

*Amaechi v. West,* 237 F.3d 356 (4th Cir. 2001)(same; affirming denial of summary judgment sought on the ground of qualified immunity; genuine dispute of material fact present); *Henderson v. Simms,* 223 F.3d 267 (4th Cir.2000)(affirming grant of summary judgment on the ground of qualified immunity), *cert. denied,* —— U.S. ——, 121 S.Ct. 770, 148 L.Ed.2d 670 (2001); *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996)(applying qualified immunity to police officers charged with a Fourth Amendment excessive force violation), *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997); *see also id.,* 105 F.3d 174, 178 (4th Cir.1997)(explicating purpose of qualified immunity defense; collecting Supreme Court cases)(Wilkinson, Chief Judge, concurring in denial of rehearing en banc).

▇▇▇ Here, the record leaves no room for doubt that the initial stop of Fersner's vehicle was permissibly based on articulable suspicion that the operator of his vehicle might have been impaired (either by alcohol or because he was a sleepy driver; it was 3:00 a.m.). *See Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). On the other hand, I have considerable doubt as to whether, as a matter of law (the issue being presented on summary judgment) there existed probable cause for Fersner's arrest. Although Chaney testified that Fersner

failed the "walk and turn" test (which Fersner seemingly denies), and notwithstanding the evidence of Fersner's alleged watery and bloodshot eyes (which Fersner claims is a fabrication, in any event), Chaney was constantly in close physical proximity to Fersner but never detected the odor of alcohol. Moreover, the question whether (based on the facts viewed in the light most favorable to Fersner) there was a "fair probability," *cf. Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983),[6] that Fersner, a sworn police officer from a neighboring jurisdiction, was under the influence of narcotics, is problematic, at best.

But this is exactly the point of the qualified immunity defense. To deny the defendants the benefit of the qualified immunity defense, I would have to be persuaded that *no* reasonably competent officer could have concluded that probable cause existed to believe Fersner was operating under the influence. On this record, even viewing the material facts in the light most favorable to Fersner, I am not persuaded that *no* reasonable law enforcement officer could have concluded (as did Bailey) that probable cause existed based on the aborted investigation of Fersner's physical and mental condition after the single field sobriety test. *See Wadkins v. Arnold,* 214 F.3d 535, 541 & n. 7 (4th Cir.)("Reasonable law enforcement officers are not required

---

**6.** The Fourth Circuit summarized in *Henderson:*

> Probable cause ... is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (internal quotation marks omitted). "Whether probable cause exists in a particular situation ... always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that

conduct." *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir.1992). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.*

See 223 F.3d at 271. *Cf. Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788–89 (3d Cir.2000) (stating that a court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding").

to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.''') (citation omitted), *cert. denied*, —— U.S. ——, 121 S.Ct. 485, 148 L.Ed.2d 458 (2000); *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992)("[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). *And see Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir.1991)("The very idea of reasonableness requires that courts accord interpretive latitude to official judgments.").[7]

Admittedly, the defendants here made a serious mistake. Nevertheless, the precedents make it clear that police officers may make mistakes without violating the Fourth Amendment, *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Gooden*, 954 F.2d at 966, and they may violate the Fourth Amendment without incurring civil liability where a reasonable police officer would not have known she was committing such a violation. *Id.* Thus, all of Fersner's Fourth Amendment claims fail as a matter of law.

## IV

It is the general rule in this circuit that once federal claims have been finally resolved on pre-trial motion, supplemental jurisdiction over pendent state law claims should be declined. 28 U.S.C. § 1367(c)(3); *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614,

98 L.Ed.2d 720 (1988); *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir.1996); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). I shall, therefore, dismiss the state law claims without prejudice. An order follows.

## ORDER

In accordance with the foregoing Memorandum, it is this 11th day of April, 2001, by the United States District Court for the District of Maryland,

(1) ORDERED that the motion for summary judgment filed by Defendants BE, and it hereby is GRANTED and ALL FEDERAL CLAIMS ALLEGED IN THE AMENDED COMPLAINT ARE DISMISSED WITH PREJUDICE; and it is further (2) ORDERED that ALL STATE LAW CLAIMS ARE DISMISSED WITHOUT PREJUDICE; and it is further

(3) ORDERED that the Clerk of the Court CLOSE THIS CASE and TRANSMIT copies of this Order and the foregoing Memorandum to counsel of record.

---

7. Judge Schwartz recently put the matter succinctly:

> If an officer arrests the plaintiff without probable cause, the officer is immune from suit if he can show either that: (i) it was objectively reasonable for him to believe he had probable cause; or (ii) officers of reasonable competence could disagree whether probable cause existed.

*Sulkowska v. New York*, 129 F.Supp.2d 274, 293 (S.D.N.Y.2001) (citations omitted). Here, officers of reasonable competence could surely disagree as to whether there was probable cause.