NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 16, 2018[*]
Decided March 16, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1874

| | |
|---|---|
| TIMOTHY B. WILKS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 15-C-1053 |
| WELCOME ROSE, et al., *Defendants-Appellees*. | C.N. Clevert, Jr., *Judge*. |

**O R D E R**

Timothy Wilks, a Wisconsin inmate, principally argues in this appeal that prison officials violated the First Amendment when they banned him from using his cell to market a book that he has published. The district judge entered summary judgment for the defendants, ruling that penological interests justify the restriction. We agree and thus affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Ten years ago Wilks sued officials at Waupun Correctional Institution for barring him from publishing religious books. The parties settled the case, and the Wisconsin Department of Corrections set out rules under which prisoners may publish books that they write while incarcerated. With the approval of Waupun's administration, Wilks then contracted with an outside company to publish at least one religious book.

This case involves a dispute over Wilks's plan to market his book from his cell. His publisher mailed him 100 marketing postcards that displayed the book's cover image, biographical information about Wilks, and instructions for ordering the book from the publisher. A property officer told Wilks that the postcards were contraband. Wilks replied that he would mail the postcards to a family member, but he later asked the prison's property department to hold his postcards while he contested their classification as contraband. A prison supervisor has since explained that Wilks could not keep the postcards in his cell because he risked violating two prison regulations: soliciting inmates to buy his book and retaining in his cell more than 25 pieces of personal correspondence. (Wilks does not contest either regulation.) The supervisor proposed as a compromise that the prison's mail staff store the postcards and mail them individually in prepaid envelopes that Wilks would supply. Although the prison's security director tentatively approved that proposal, Wilks rejected it. The director has since explained that the proposal is unworkable because mail staff would be diverted from their necessary work of screening all prison mail. He further explained that allowing inmates to market from their cells risks defrauding the public, "spawning disputes between inmates and members of the public[,] and entangling the prison in inmate business activities."

Wilks filed a grievance accusing the prison of violating his "rights to perfect [his] book publishing interests." He wanted to keep the postcards in his cell and mail them directly to potential customers. Waupun's warden dismissed Wilks's grievance, and a complaint examiner recommended dismissing his administrative appeal. The examiner also rejected the proposed compromise that Wilks too had rejected: It "cannot be implemented" because "[t]here is no authority granted in the administrative rules to allow an inmate permission to market a publication while in prison if the publication (the enterprise) did not exist prior to the inmate's sentencing." The Secretary of the Department of Corrections dismissed the appeal. At this point, Wilks could have mailed the postcards to someone outside the prison to promote sales. But he opted to have the postcards destroyed. Wilks was permitted to keep one in his cell, however.

This litigation under 42 U.S.C § 1983 followed. The district judge allowed Wilks to proceed on a claim that prison officials violated the First Amendment by barring mailings from his cell to market his book. The judge dismissed a due-process claim about the disposal of his postcards, reasoning that Wilks had asked for their disposal. (Wilks also raised a claim for breach of the settlement contract but he does not contest that claim's dismissal on appeal.) The district judge then entered summary judgment for the defendants because they had identified legitimate penological interests that justified restrictions on Wilks's marketing activities. The judge added that the defendants would be entitled to qualified immunity even if they violated Wilks's rights because he pointed to "no case establishing an inmate's constitutional right to market or sell his published works."

On appeal Wilks principally challenges the dismissal of his claim that prison officials have violated the First Amendment by restricting how he may commercially market his book. The parties debate the standards that govern our analysis. We usually analyze the constitutionality of prison regulations using the standard in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), but we scrutinize the censorship of an inmate's outgoing mail under the less-deferential standard in *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)*; see Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006). Because the parties disagree about whether the prison has "censored" Wilks's outgoing mail, they also disagree about which standard applies. We need not resolve this debate, however, because Wilks cannot prevail even under the *Martinez* standard.

*Martinez* holds that a prison regulation that censors outgoing mail is permissible if the regulation (1) furthers an important governmental interest "unrelated to the suppression of expression" and (2) is no greater than necessary to accomplish that interest. 416 U.S. at 413. Waupun's regulation restricts Wilks by requiring that he have someone outside the prison mail the postcards to market the book. But Wilks has not created a triable question that this restriction fails under these two elements.

First, Wilks offers no evidence that reasonably questions the importance of the prison's identified interests in prohibiting marketing from an inmate's cell. These are the interests of preserving the resources of the mail room's staff, who must screen the mail of *all* of the inmates, and ensuring that the prison protects the public from inmate-generated mail fraud. We have recognized both of these interests as substantial. *See Woods v. Comm'r of the Ind. Dep't. of Corr.*, 652 F.3d 745, 749 (7th Cir. 2011) (recognizing that prison officials have legitimate interest in preventing fraud by

banning prisoners from advertising to the public for pen pals); *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007) (prison officials are constitutionally permitted to save resources by limiting the types of mail staff must process).

Second, Wilks offers no evidence that the restriction is greater than necessary to further these interests. He argues that the compromise (that both he and the prison staff rejected) of having the mail room's staff market the book for him is such evidence. As he sees it, that compromise is workable; otherwise administrators would not have proposed it. But the current regulation is not materially more restrictive than the rejected compromise. Under the current regulation, Wilks may ask *anyone* outside the prison (including the publisher) to send out his mailings. Wilks replies that he lacks funds to pay someone to help market the book. But he offers no evidence that an outsider *requires* payment from him. And even if outsiders do require payment, that fact does not imply that Wilks may commandeer the prison's staff to help him market his book for his commercial gain. For prisons may permissibly bar an inmate from using the prison's resources to enhance an inmate's business operations. *See King v. Federal Bureau of Prison*, 415 F.3d 634, 636 (7th Cir. 2005). Thus because the restriction is no greater than necessary to serve the prison's legitimate interests, the First Amendment claim fails.

We have one final matter. Wilks also challenges the dismissal of his due-process claim at screening. To the extent that Wilks contends that he did not receive proper procedural protections before the staff destroyed his postcards, his claim fails because Wilks admits that he directed the destruction of the postcards. And to the extent that Wilks suggests that the restriction on his marketing activities violated his right to substantive due process, that argument amounts to little more than a futile repackaging of Wilks's First Amendment claim. When "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims*." Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted); *see also Koutnik*, 456 F.3d at 781 n.2.

We have considered Wilks's remaining arguments, and none merits discussion.

AFFIRMED